UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

MICHAEL GRECCO PRODUCTIONS, INC.,

      *Plaintiff,*

    v.

ALAMY INC.,

      *Defendant.*

1:18-cv-03260-PKC-JO

## ALAMY INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Nancy E. Wolff
Lindsay W. Bowen
Brittany L. Kaplan-Peterson
COWAN, DEBAETS, ABRAHAMS &
SHEPPARD LLP
41 Madison Avenue, 38th Floor
New York, NY 10010
Telephone:  (212) 974-7474

*Attorneys for Defendant Alamy Inc.*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................................iii, vii

PRELIMINARY STATEMENT ...............................................................................1

BACKGROUND.........................................................................................................2

ARGUMENT...............................................................................................................6

    I.     THE STANDARD GOVERNING A MOTION TO DISMISS......................6

    II.    PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED BECAUSE
           THIS COURT LACKS PERSONAL JURISIDICTION OVER ALAMY............6

          A.    Plaintiff Incorrectly Identifies Alamy Inc. as the
                 Defendant in this Lawsuit ..................................................7

          B.    Plaintiff Fails to Plead Personal Jurisdiction Over Alamy Ltd...................8

    III.   PLAINTIFF FAILS TO STATE A CLAIM UNDER SECTION 1202
           OF THE DIGITAL MILLENNIUM COPYRIGHT ACT...............................11

    IV.   SECTION 512(c) OF THE DIGITAL MILLENNIUM
           COPYRIGHT ACT PROTECTS ALAMY FROM LIABILITY
           WITH RESPECT TO THE BOB MARLEY PHOTOGRAPH ........................12

CONCLUSION..........................................................................................................18

i

## TABLE OF AUTHORITIES

**Cases**                                                                                      **Page(s)**

*Aaberg v. Francesca's Collections, Inc.,*
    No. 17-CV-115 (AJN), 2018 WL 1583037 (S.D.N.Y. Mar. 27, 2018) ..............................……..12

*Allen v. Scholastic Inc.,*
    739 F. Supp. 2d 642 (S.D.N.Y. 2011).................................................................................14

*Andy Stroud  v. Brown,*
    No. 08 Civ. 8246, 2009 WL 539863 (S.D.N.Y. Mar. 4, 2009) ...............................................8

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)..................................................................................................6, 12

*Authors Guild, Inc. v. HathiTrust,*
    755 F.3d 87 (2d Cir. 2014) ...…………………………………………………………..11

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007)..................................................................................................3, 6

*Best Van Lines, Inc. v. Walker,*
    490 F.3d 239 (2d Cir. 2007)......................................................................................9, 10

*Brown v. Daikin Am. Inc.,*
    756 F.3d 219 (2d Cir. 2014).....................................................................................6, 12

*Burger King Corp. v. Rudzewicz,*
    471 U.S. 462 (1985).....................................................................................................9

*Capitol Records, Inc. v. MP3tunes, LLC,*
    611 F. Supp. 2d 342 (S.D.N.Y. 2009)......................................................................15, 16

*Capitol Records, LLC v. Vimeo, LLC,*
    826 F.3d 78 (2d Cir. 2016), *cert. denied*, 137 S Ct. 1374 (2017) .....................................15, 16

*Centrifugal Force, Inc. v. Softnet Commc'n, Inc.,*
    No. 08 CIV. 5463 CM GWG, 2009 WL 1059647 (S.D.N.Y. Apr. 17, 2009) ...........................8

*Chambers v. Time Warner, Inc.,*
    282 F.3d 147 (2d Cir. 2002)........................................................................................14

*In re DDAVP Direct Purchaser Antitrust Litig.,*
    585 F.3d 677 (2d Cir. 2009)........................................................................................12

*DiFolco v. MSNBC Cable L.L.C.,*
    622 F.3d 104 (2d Cir. 2010)........................................................................................13

ii

*Heckman v. Town of Hempstead*,
    568 F. App'x 41 (2d Cir. 2014) ....................................................................................7

*Hempton v. Pond5, Inc.*,
    No. 3:15-CV-05696-BJR, 2016 WL 6217113 (W.D. Wash. Oct. 25, 2016) ...........................13

*Highsmith et al. v. Getty Images (US), Inc. et al.*,
    No. 1:16-cv-5924 (JSR), Dkt. No. 67 (S.D.N.Y. Oct. 3, 2016) ..........................................11

*Highsmith et al. v. Getty Images (US), Inc. et al.*,
    No. 1:16-cv-5924 (JSR), Dkt. No. 68 (S.D.N.Y. Oct. 28, 2016) ........................................15

*Int'l Shoe Co. v. Washington*,
    326 U.S. 310 (1945) ...............................................................................................9, 10

*Jazini v. Nissan Motor Co.*,
    148 F.3d 181 (2d Cir. 1998) ......................................................................................10

*In re Livent, Inc. Noteholders Sec. Litig.*,
    151 F. Supp. 2d 371 (S.D.N.Y. 2001) ...........................................................................6

*Mantello v. Hall*,
    947 F. Supp. 92 (S.D.N.Y. 1996) ...............................................................................10

*Matthew v. RCN Corp.*,
    No. 12-cv-0185 JMF, 2012 WL 5834917 (S.D.N.Y. Nov. 14, 2012) ...................................8

*Michael Grecco Photography, Inc. v. Everett Collection, Inc.*,
    589 F. Supp. 2d 375 (S.D.N.Y. 2008) .........................................................................11

*Mott. v. IBM*,
    No. 2:10-cv-04933-JFB-WDW, 2011 WL 3846523 (E.D.N.Y. Aug. 9, 2011),
    *report and recommendation adopted*, No. 2:10-cv-04933-JFB-WDW,
    2011 WL 3847176 (E.D.N.Y. Aug. 30, 2011)....................................................................8

*Orozco v. Fresh Direct, LLC*,
    No. 15-cv-8226 (VEC), 2016 WL 5416510 (S.D.N.Y. Sept. 27, 2016),
    *appeal dismissed*, No. 16-3629, 2017 WL 5054219 (2d Cir. Mar. 10, 2017) .................7, 13

*Overseas Media, Inc. v. Skyortsoy,*,
    407 F. Supp. 2d 563 (S.D.N.Y. 2006), *aff'd*, 277 F. App'x 92,
    2008 WL 1994981 (2d Cir. May 8, 2008) ........................................................................8

*Reich v. Lopez*,
    38 F. Supp. 3d 436 (S.D.N.Y. 2014)..............................................................................9

*Staehr v. Hartford Fin. Servs. Grp., Inc.*,
    547 F.3d 406 (2d Cir. 2008) .......................................................................................13

*TechnoMarine SA v. Jacob Time, Inc.,*
    No. 12 CIV. 0790 KBF, 2012 WL 2497276 (S.D.N.Y. June 22, 2012) .......................................7

*Teva Pharm. USA, Inc. v. Sandoz Inc.,*
    No. 09 CIV. 10112 KBF, 2013 WL 3732867 (S.D.N.Y. July 16, 2013) ...............................18

*UMG Recordings, Inc. v. Shelter Capital Partners LLC,*
    718 F.3d 1006 (9th Cir. 2013) ...........................................................................................16

*Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp.,*
    751 F.2d 117 (2d Cir. 1984) ...............................................................................................10

*Wolk v. Kodak Imaging Network, Inc.,*
    840 F. Supp. 2d 724 (S.D.N.Y. 2012), *aff'd sub nom.*
    *Wolk v. Photobucket.com, Inc.,* 569 F. App'x 51 (2d Cir. 2014) .....................................15

**Rules and Statutes**

17 U.S.C. § 512(c) ...........................................................................................................*Passim*

17 U.S.C. § 512(i) ...................................................................................................................14

17 U.S.C. § 512(k) ..................................................................................................................14

17 U.S.C. § 512(m) .................................................................................................................17

17 U.S.C. 1201 .......................................................................................................................11

17 U.S.C. 1202 .........................................................................................................................4

CPLR § 302(a) ...................................................................................................................9, 10

**Other Materials**

Alamy, https://www.alamy.com/contactus/uk.asp ......................................................................7

Alamy Forums, https://discussion.alamy.com/ ......................................................................2, 13

144 Cong. Rec. H7074-03 (1998) ............................................................................................17

3 Meville Nimmer & David Nimmer, *Nimmer on Copyright* (2015), § 12 ............................16

S. Rep. No. 105-190 (1998) .....................................................................................................17

Terms and Conditions, http://www.alamy.com/terms/general.asp .........................................3, 7

Defendant Alamy Inc., by its attorneys, Cowan, DeBaets, Abrahams & Sheppard LLP, respectfully submits this Memorandum of Law in Support of its Motion to Dismiss plaintiff Michael Grecco Productions, Inc.'s ("Plaintiff") complaint dated June 4, 2018 (the "Complaint" or "Cplt.") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

Plaintiff is a habitual litigant that has filed multiple copyright infringement lawsuits in courts across the country. As a result, Plaintiff has become one of many photographers-turned-serial plaintiffs burdening courts in this District and others with unnecessary litigation. During this campaign, Plaintiff has developed a shoot-first approach, filing complaints before submitting any notice of copyright infringement to defendants or otherwise attempting to resolve the claims that form the basis of its typically low-value suits.

Plaintiff followed its unfortunate and needlessly litigious pattern in the present action. Had Plaintiff contacted Alamy Inc. before filing, the Court may not have been burdened with this motion at all. Indeed, through counsel, Alamy Inc. would have informed Plaintiff that it is not a proper party to a suit over the facts alleged. It would have also informed Plaintiff that its United Kingdom-based corporate parent is not subject to personal jurisdiction in this District; that its parent's digital watermarks are not and do not purport to be indications of copyright ownership by longstanding industry custom and the parent's website terms, and that at least one, and possibly all, of the photographs at issue is plainly covered by the Digital Millennium Copyright Act ("DMCA") and thus cannot be the subject of litigation absent completion of Plaintiff's notice-and-takedown obligations.

Finally, Alamy Inc. would have informed Plaintiff that it is well-aware of Plaintiff's practice of improperly asserting copyright ownership in "publicity argustills" depicting

characters from well-known television series, even though Plaintiff knows that each shows'

producers – and not Plaintiff – are the actual copyright owners, or at minimum, are the owners of

exclusive publication rights in the Photographs. Of course, in most circumstances, a plaintiff's

factual assertions must be accepted as true when considering a motion to dismiss. However,

Plaintiff's hasty approach to litigation is reflected in these and other factual inaccuracies

contained within the Complaint – inaccuracies which could have been corrected either by Alamy

Inc.'s response to a customary demand letter, or, as demonstrated below, *if Plaintiff had*

*adequately reviewed its own exhibits to its own Complaint.*

## BACKGROUND

The facts relevant to this motion begin with a party that Plaintiff has failed to name in

this action. Alamy Ltd. ("Alamy") is a digital stock photography agency. It is an English

corporation with its headquarters in England, and owns subsidiary entities with offices located in

the United States, Australia and India.

With over 145 million images in its archive, it is one of the largest platforms worldwide

for photographers, illustrators, videographers, and image collectors to upload images and make

them available for sale. Alamy licenses its images through its website, located at the domain

name www.alamy.com. Alamy does not edit or curate the uploaded images, but it does enforce

image quality standards that are explained in its submission guidelines. Alamy's website also

features a section titled "Forums." The Forums are comprised of several online message boards,

including one on which users may post questions, and answer fellow users' questions, regarding

Alamy or digital image libraries in general. [1]

Alamy respects photographers, the images they create, and the law. Contributors to

---

[1] Forums, https://discussion.alamy.com/ (last visited August 23, 2018).

Alamy's website must agree to Alamy's standard contributor agreement, which warrants that the upload is with permission.  In accordance with the Digital Millennium Copyright Act ("DMCA") and other applicable laws, Alamy has adopted a policy of immediately deleting images and terminating, in appropriate circumstances, account holders who infringe the intellectual property rights of others.[2]  Alamy is proud that it treats photographers fairly, paying them a commission for licensing the images they contribute to its online platform that is significantly higher than the industry standard.  It also treats its customers fairly, charging a reasonable price for access to images uploaded to Alamy's website by contributors.  Moreover, Alamy treats the world around it fairly, donating a set portion of its operating profits since 2007 to a charity which promotes medical and educational aims.

However, perhaps recognizing that Alamy is beyond the jurisdiction of this Court, Plaintiff did not bring this suit against it, and named its subsidiary, Alamy Inc., instead.  Alamy Inc. is a sales office based in Brooklyn, which provides support to Alamy by managing Alamy's relationships with the larger, U.S.-based users of Alamy's website.  Fatal to the Complaint, Alamy Inc. has engaged in none of the activity alleged by Plaintiff.

Plaintiff is a California-based photography studio and business owned and operated by photographer Michael Grecco.  Cplt. ¶ 5.[3]  Plaintiff claims that it owns and has registered several photographs, including what are clearly publicity photographs that depict actors portraying

---

[2] See Terms and Conditions, http://www.alamy.com/terms/general.asp#policy (last visited August 23, 2018).
[3] Factual allegations contained in the Complaint are accepted as true for purposes of this Motion. See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 553 (2007).

characters from famous television series and are owned by third parties (the "Photographs"). *Id.* at ¶¶ 18-19, Exs. A – C.[4]

Plaintiff's claims fail as a matter of law for several reasons. As an initial matter, Plaintiff's Complaint incorrectly names Alamy Inc. as a defendant. Alamy Inc. is not involved in Alamy's operations, nor in the maintenance and operation of Alamy's website. Accordingly, Alamy Inc. played no role whatsoever in any conduct alleged by Plaintiff to have infringed Plaintiff's purported copyright rights. Moreover, any amendment to the Complaint to identify Alamy would be futile, as this Court is unable to properly exercise personal jurisdiction over the United Kingdom-based Alamy. Plaintiff's Complaint should be dismissed in its entirety for this reason alone.

Even assuming that a proper defendant were named in the Complaint, Plaintiff's Section 1202 claim fails for the independent reason that Plaintiff does not identify any copyright management information provided by Alamy, false or otherwise; instead, Plaintiff merely points to Alamy's use of a watermark, which does not serve as an indication of authorship or copyright ownership. Nor does Plaintiff plausibly allege that Alamy provided such false "copyright management information" with the "intent to induce, enable, facilitate, or conceal infringement." 17 U.S.C. 1202(a). Alamy uses its watermark to facilitate the proper licensing of images in its archive, which have been uploaded by contributors that Alamy believes, in good faith, have the right to enter into such licenses.

Further, again assuming a proper defendant had been named, Plaintiff's claims with

---

[4] Although outside the bounds of this Motion, Alamy has discovered that Plaintiff does not own copyright rights in all of the Photographs. Instead, with respect to multiple Photographs, such rights are owned by the studio that produced the television shows whose characters are depicted in the Photographs. The studios commissioned Mr. Grecco to take the Photographs as works made for hire.

respect to the Photograph depicting Bob Marley are expressly barred by the safe harbor provisions of the DMCA. The exhibits in the Complaint plainly show that the image was uploaded to an Alamy forum, or online community board, as part of user-generated content. Because Plaintiff did not send a takedown as mandated by 17 U.S.C. 512(c)(1)(C), and does not allege that Alamy took any actions or had the requisite knowledge necessary to disqualify it from the DMCA's protection against infringement claims arising from user-generated content, Plaintiff's claims with respect to the Bob Marley image fails a matter of law and should be dismissed.

Finally, Plaintiff's allegations hinge on a plainly implausible assertion of fact. Plaintiff alleges that, pursuant to certain contributor agreements, it provided the Photographs to third-party Superstock, a Florida-based image library. Cplt., ¶¶ 10-11. According to the Complaint, Superstock uploaded the Photographs to Alamy's website. *Id.* at ¶ 9; 12. In 2013, Plaintiff's agreements with Superstock were terminated, subject to an eighteen-month "survival term," during which time Superstock was authorized to continue licensing Plaintiff's Photographs. *Id.* at ¶¶ 13-14.

Plaintiff alleges that Alamy Inc. continued using the Photographs following expiration of Superstock's survival term without authorization or a license. *Id.* at ¶¶ 20 – 21; 23; Ex. C. Although Plaintiff's Complaint hinges on Superstock as the source of the Photographs, incredibly, none of Plaintiff's exhibits demonstrate that Superstock was the contributor, and in certain instances, the exhibits expressly confirm that Superstock was *not* the contributor of the Photographs to Alamy's website. *See, e.g., id.,* Ex. C at 4 (identifying "A.F. Archive" as the contributor). Accordingly, Plaintiff's assertion to the contrary lacks plausibility and shows a basic failure to investigate the facts of the case.

## ARGUMENT

### I.     THE STANDARD GOVERNING A MOTION TO DISMISS

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. But "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, and "[courts] 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Brown v. Daikin Am. Inc.*, 756 F.3d 219, 225 (2d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555) (internal quotations marks and citations omitted).

Applying the plausibility standard is a "context-specific task" requiring the Court "to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 663-64. Thus, while the Court is generally required, on a motion to dismiss, to accept a complaint's factual allegations as true, the Court "need not feel constrained to accept as truth conflicting pleadings that make no sense . . . or that are contradicted either by statements in the complaint itself[,] [by prior complaints,] or by documents upon which its pleadings rely, or by facts of which the court may take judicial notice." *In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371, 405-06 (S.D.N.Y. 2001) (collecting cases).

### II.     PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED BECAUSE THIS COURT LACKS PERSONAL JURISDICTION OVER ALAMY

Plaintiff's Complaint should be dismissed because it incorrectly names Alamy Inc. as a defendant, and because Plaintiff's Complaint fails to plead personal jurisdiction over Alamy.

## A. Plaintiff Incorrectly Identifies Alamy Inc. as the Defendant in this Lawsuit

In its Complaint, Plaintiff names only Alamy Inc. as a defendant.  However, Alamy Inc. is a sales office located in Brooklyn, New York.  Cplt. ¶ 6.  Alamy Inc. is a subsidiary of Alamy Ltd., an English corporation based in Milton Park, Abingdon, Oxfordshire, England.  *See* Alamy, https://www.alamy.com/contactus/uk.asp (last visited August 23, 2018).[5]  Alamy Ltd. maintains and operates the website located at the domain name www.alamy.com.  *See* Terms and Conditions, https://www.alamy.com/terms/general.asp (last visited August 23, 2018) (noting Alamy website owned and operated by Alamy Ltd.).  Alamy Ltd.'s executive team is located in the United Kingdom; similarly, Alamy Ltd.'s upload servers are also located in the United Kingdom.  Alamy Inc. plays no role in Alamy Ltd.'s operations.  Instead, Alamy Inc. provides support to Alamy Ltd. by maintaining and cultivating relationships with the larger, U.S.-based users of Alamy's website.  Alamy Inc. does not upload images to Alamy's website; nor does it maintain, control the content of, or provide technical support with respect to Alamy's website.  Alamy Inc.'s activities are not at issue in this case, and do not form the basis of Plaintiff's allegations.  Indeed, Plaintiff (incorrectly) characterizes Alamy Inc. as the "own[er] and operat[or of] the website located at the URL http://www.alamy.com, where it reproduces, displays, distributes, and purports to offer license rights to photograph images."  Cplt. ¶ 8.  Such

---

[5] On this Motion, the Court may consider the "totality" of Alamy's website, as the Complaint "relies explicitly" on such website.  *Orozco v. Fresh Direct, LLC,* No. 15-cv-8226 (VEC), 2016 WL 5416510, at *1 (S.D.N.Y. Sept. 27, 2016), appeal dismissed, No. 16-3629, 2017 WL 5054219 (2d Cir. Mar. 10, 2017).  *See also Heckman v. Town of Hempstead*, 568 F. App'x 41, 43 (2d Cir. 2014) (on a motion to dismiss, a Court is entitled to consider documents attached to the complaint or incorporated in it by reference; documents "integral" to the complaint and relied upon in it; and documents and facts of which judicial notice may properly be taken under Federal Rule of Evidence 201); *TechnoMarine SA v. Jacob Time, Inc.*, No. 12 CIV. 0790 KBF, 2012 WL 2497276, at *1 (S.D.N.Y. June 22, 2012) ("The Court may take judicial notice of the fact that a publicly accessible website contains certain information.").

7

characterization confirms that Plaintiff's Complaint is intended to assert allegations against the owner and operator of Alamy's website (*i.e.,* Alamy Ltd.).

Because it is clear from the Complaint and website upon which the Complaint relies that the Complaint names the wrong defendant, the Complaint must be dismissed. *See Mott v. IBM,* No. 2:10-cv-04933-JFB-WDW, 2011 WL 3846523, at *2 (E.D.N.Y. Aug. 9, 2011), *report and recommendation adopted*, No. 2:10-cv-04933-JFB-WDW, 2011 WL 3847176 (E.D.N.Y. Aug. 30, 2011); *Matthew v. RCN Corp.,* No. 12-cv-0185 JMF, 2012 WL 5834917, at *8 (S.D.N.Y. Nov. 14, 2012).

**B.  Plaintiff Fails to Plead Personal Jurisdiction Over Alamy Ltd.**

Alamy Ltd. is not named as a defendant in Plaintiff's Complaint, but even if the Complaint were amended to name Alamy Ltd., the Complaint fails to establish that this Court's exercise of personal jurisdiction over Alamy Ltd. is proper.  Despite Plaintiff's assertion to the contrary (*see* Dkt. No. 15 at 2), any amendment to the Complaint to add Alamy Ltd. would be futile; the Complaint should therefore be dismissed without regard to a possible amendment. *See Mott,* 2011 WL 3846523, at *3 (granting motion to dismiss where incorrect defendant named and motion to amend would be futile).

The Copyright Act does not contain its own jurisdictional provision; accordingly, this Court must look to the law of the forum state (New York) to determine whether personal jurisdiction exists. *Centrifugal Force, Inc. v. Softnet Commc'n, Inc.*, No. 08 CIV. 5463 CM GWG, 2009 WL 1059647, at *3 (S.D.N.Y. Apr. 17, 2009) (citing *Overseas Media, Inc. v. Skyortsoy,* 407 F. Supp. 2d 563, 567 (S.D.N.Y.2006) *aff'd,* 277 F. App'x 92, 94, 2008 WL 1994981, at *1 (2d Cir. May 8, 2008); *Andy Stroud, Inc. v. Brown,* No. 08 Civ. 8246, 2009 WL 539863, at *3 (S.D.N.Y. Mar. 4, 2009)).  If jurisdiction is proper pursuant to New York's Civil

Procedure Law and Rules ("CPLR"), this Court must next determine whether "asserting jurisdiction under that provision would be compatible with requirements of due process established under the Fourteenth Amendment to the United States Constitution." *Best Van Lines, Inc. v. Walker,* 490 F.3d 239, 242 (2d Cir. 2007) (citing *Int'l Shoe Co. v. Washington,* 326 U.S. 310 (1945)). Due process protects foreign actors based on principles of minimum contacts and reasonableness. *See Int'l Shoe,* 326 U.S. at 316. Here, New York's long-arm statue does not require Alamy Ltd., a United Kingdom entity, to answer in New York for conduct that did not occur within the state. *See Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472 (1985).

Plaintiff's Complaint does not identify a specific provision of New York's long-arm statue granting jurisdiction over Alamy Ltd., nor can it, as jurisdiction is improper under each provision. To satisfy Section 302(a)(1) of the CPLR, for instance, Plaintiff must plead, among other things, that its claims arise directly from business Alamy Ltd. conducted in New York. *See* N.Y. CPLR § 302(a)(1); *Reich v. Lopez,* 38 F. Supp. 3d 436, 457 (S.D.N.Y. 2014) ("[I]n determining whether personal jurisdiction may be exercised under section 302(a)(1), a court must decide (1) whether the defendant transacts any business in New York and, if so, (2) whether this cause of action aris[es] from such a business transaction . . . The 'arising out of' requirement for personal jurisdiction under § 302(a)(1) is not the same as merely being indirectly 'related to' the transacted business.").

Plaintiff does not allege that Alamy Ltd.'s conduct occurred in New York. Instead, the Complaint alleges that Alamy Inc. infringed Plaintiff's asserted copyright rights "by reproducing, publicly displaying, distributing and offering to license the [Photographs] through its website located at the URL http://www.alamy.com." Cplt. ¶ 20. As noted above, Alamy Inc. does not operate Alamy's website; moreover, Alamy Ltd.'s website is hosted in the United

Kingdom.  Finally, the Complaint omits any allegation that the Photographs were specifically licensed to customers located in New York.  As a result of Plaintiff's failure to allege any specific New York conduct, Plaintiff has failed to allege the requisite "substantial nexus" between Alamy Ltd.'s allegedly infringing conduct and Plaintiff's claims.  *See Mantello v. Hall,* 947 F. Supp. 92, 100 (S.D.N.Y. 1996) (noting requirement).  Thus, Alamy Ltd.'s actions do not support jurisdiction under CPLR § 302(a)(1).

Plaintiff also fails to establish that the exercise of personal jurisdiction is proper under CPLR § 302(a)(2).  Plaintiff alleges that Alamy Inc. "has committed torts in this state . . . which causes harm in this state and Judicial District," Cplt. ¶ 3, but Plaintiff fails to specify how Alamy Inc.'s purported actions have caused Plaintiff in-state harm.  To the contrary, Plaintiff acknowledges that it is a California corporation, with a principal place of business in Santa Monica, California.  *Id.* at ¶ 5.  For the same reasons, Plaintiff's complaint fails to plead personal jurisdiction under CPLR § 302(a)(3), which also requires that a plaintiff plead a "tortious act" that "cause[es] injury to person or property within the state."  CPLR § 302(a)(3).

Finally, the exercise of personal jurisdiction over a non-domiciliary must comport with due process.  *Best Van Lines*, 490 F.3d at 242; *Int'l Shoe*, 326 U.S. at 315.  The mere presence of Alamy Inc. in New York does not create jurisdiction over Alamy Ltd., a related, but independently managed, foreign corporation.  *Jazini v. Nissan Motor Co.,* 148 F. 3d 181, 184 (2d Cir. 1998) (mere presence of a subsidiary alone does not establish the parent's presence in New York); *Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp.*, 751 F.2d 117, 120 (2d Cir. 1984).  With no facts plausibly alleging the proper exercise of personal jurisdiction, Plaintiff's Complaint should be dismissed.

10

### III.   PLAINTIFF FAILS TO STATE A CLAIM UNDER SECTION 1202 OF THE DIGITAL MILLENNIUM COPYRIGHT ACT

Plaintiff asserts that Alamy has provided and distributed false copyright management information in violation of Section 1202 of the DMCA, but in support of its claim, cites only to Alamy's use of a watermark on the low-resolution display versions of images appearing on Alamy's website. Cplt. ¶ 22. According to Plaintiff, Alamy's use of a watermark identifies Alamy as the "copyright interest holder" in the Photographs. Cplt. ¶ 34. However, Alamy's watermarks are not applied to the photos it licenses, but rather, to lower-resolution example photos in the nature of "thumbnails," the use of which – in the context of Alamy's website – is a fair use that expressly does not come within the ambit of Section 1202. 17 U.S.C. § 1201(c)(1); *Authors Guild, Inc. v. HathiTrust*, 755 F.3d 87, 95 (2d Cir. 2014). Moreover, a watermark is not an indication of authorship or copyright ownership, but rather an indication of "the originator of the website" on which the photos appeared, which Plaintiff knows because it is an issue that was fully litigated in a case Grecco himself filed. *See Michael Grecco Photography, Inc. v. Everett Collection, Inc.*, 589 F. Supp. 2d 375, 387 (S.D.N.Y. 2008) (vacated in part on other grounds); *see also Highsmith et al. v. Getty Images (US), Inc. et al.*, No. 1:16-cv-5924 (JSR), Dkt. No. 68 (S.D.N.Y. Oct. 28, 2016) (granting Alamy's motion to dismiss, *inter alia*, plaintiff's Section 1202 claim premised on Alamy's use of its watermark on Alamy's website); *Id.*, Dkt. No. 67 at 10 (S.D.N.Y. Oct. 3, 2016) (explaining the arguments before the court in the foregoing motion). Alamy's use of a watermark cannot, therefore, sustain Plaintiff's Section 1202 claim because such use does not constitute the provision and distribution of false copyright management information. Indeed, a watermark is consistently applied to all search results in Alamy's image library. Much like a visitor to a public library, who notices the library's stamp on the fore edge of every book, a user of Alamy's digital library could not plausibly believe that Alamy was

11

declaring itself to be the author of the 145 million-plus photographs contained within Alamy's archive.

Moreover, Plaintiff's assertion that Alamy utilizes a watermark in order to induce infringement is both inaccurate and implausible. Cplt., ¶ 35. Alamy uses a watermark on low-resolution versions of the images in its archive to indicate to users that a high-resolution version of the same image is available for license, having been contributed by a third party (*e.g.*, A.F. Archive, *see* Cplt. Ex. C at 4) that has verified to Alamy that it has the right to enter into such a license. Rather than induce infringement, as Plaintiff implausibly alleges, Alamy's use of a watermark – which, for the reasons stated above, does not constitute copyright management information in the first place – is intended to induce proper licensing and payment to rights holders. On this Motion, the Court need not accept Plaintiff's implausible factual allegations. *See Iqbal*, 556 U.S. at 678; *Brown*, 756 F.3d at 225. While the Second Circuit has held that courts should be lenient in allowing scienter issues to survive motions to dismiss, *see In re DDAVP Direct Purchaser Antitrust Litig.*, 585 F.3d 677, 693 (2d Cir. 2009), this assumes that some plausible factual basis is stated, *see, e.g., Aaberg v. Francesca's Collections, Inc.*, No. 17-CV-115 (AJN), 2018 WL 1583037, at *9 (S.D.N.Y. Mar. 27, 2018), which is not the case here. Plaintiff's Section 1202 claim therefore fails as a matter of law.

## IV.   SECTION 512(c) OF THE DIGITAL MILLENNIUM COPYRIGHT ACT PROTECTS ALAMY FROM LIABILITY WITH RESPECT TO THE BOB MARLEY PHOTOGRAPH

Alamy is immune from liability with respect to the Photograph depicting Bob Marley (the "Marley Photograph") under the safe harbor provisions of the DMCA. *See* 17 U.S.C. § 512(c), which protects online service providers from liability with respect to user-generated content hosted on the provider's website. Courts may grant motions to dismiss based on an

affirmative defense so long as the applicability of the defense is apparent on the face of the complaint or documents incorporated by reference within the complaint.") (citing *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008)).[6]

Here, user-generated content is hosted on Alamy's website in a section titled "Forums." The Forums feature several online message boards, including one titled "Ask the forum."[7]  This specific message board is intended to assist those who have questions concerning either Alamy or the "stock industry" more generally.  *Id.*  Alamy's website suggests that, should a user post a question to this forum, a "fellow Alamy contributor" may have the answer to a user's question. *Id.*

As reflected in the exhibits to the Complaint, which may properly be considered on this Motion (*see, e.g., DiFolco v. MSNBC Cable L.L.C.,* 622 F.3d 104, 111 (2d Cir. 2010)), the Marley Photograph was clearly posted to such an Alamy forum as user-generated content.  Cplt. ¶ 17, Ex. A at 2, Ex. C. at 2.  Specifically, the Marley Photograph appears to have been posted by an Alamy user located in Washington, D.C.  Ex. C. at 2.  While the screenshot of the Marley Photograph attached to the Complaint omits any further information, the full post indicates that the Marley Photograph was posted by a user named "Michael Ventura," identified as a "Forum regular."  *See* Declaration of Brittany L. Kaplan-Peterson dated August 23, 2018 ("Kaplan-

---

[6] While outside the scope of Alamy Inc.'s instant motion, Alamy is immune from liability under Section 512(c) of the DMCA with respect to *all* the Photographs, as discovery will reveal that the Photographs were uploaded to Alamy's website by third-party contributors and promptly removed by Alamy upon notice of infringement.  *See Hempton v. Pond5, Inc.*, No. 3:15-CV-05696-BJR, 2016 WL 6217113 (W.D. Wash. Oct. 25, 2016).
[7] Alamy Forums, https://discussion.alamy.com/ (last visited August 23, 2018).  *See also Orozco,* 2016 WL 5416510, at *1 (on a motion to dismiss, a Court may consider the "totality" of the website on which the Complaint "explicitly relies").

Peterson Decl."), ¶ 2, Ex. 1.[8] Mr. Ventura posted the Marley Photograph to a thread in the "Ask the forum" section of Alamy's online message board titled "Have you found any Alamy photographs? January 2014." Kaplan-Peterson Decl., ¶ 2, Ex. 1. Nothing in the post itself, when viewed in its full context, indicates that it was reviewed, edited, promoted, or sponsored by Alamy or its staff or editors. Accordingly, this exhibit, standing alone, confirms that Plaintiff's claims concerning the Marley Photograph are expressly barred under the DMCA's safe harbor provisions, and fail as a matter of law.

Section 512(c) of the DMCA states, in pertinent part, that a service provider will not be liable for monetary or injunctive relief for copyright infringement "by reason of the storage at the direction of a user of material that resides on a system or network controlled or operated by or for the service provider," if the defendant satisfies certain threshold requirements. In short, the defendant must be a "service provider" (17 U.S.C. § 512(k)(1)(B)); must have reasonably implemented a policy for dealing with repeat infringers, including terminating their accounts when appropriate, (17 U.S.C. § 512(i)(1)(A)); and must not interfere with "standard technical measures" employed by copyright owners to identify or protect their copyrighted works (17 U.S.C. § 512(i)(2)). The allegations in the Complaint omit any contention that Alamy fails to satisfy any of these threshold requirements.

As an initial matter, Alamy is an Internet "service provider" within the meaning of the DMCA. *See* 17 U.S.C. § 512(k)(1)(B) (defining Internet "service provider" as a "provider of

---

[8] In considering this motion, the Court may review the full post, which Plaintiff clearly "relie[d] upon heavily," and is unquestionably "integral to the [C]omplaint," specifically, Plaintiff's claims concerning the Marley Photograph. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002). *See also Allen v. Scholastic Inc.*, 739 F. Supp. 2d 642, 645, n.1 (S.D.N.Y. 2011) (on a motion to dismiss, a court may take judicial notice of documents either in plaintiff's possession or of which plaintiff had knowledge and relied on in bringing suit).

online services or network access, or the operator of facilities therefor"); *Capital Records, LLC v. Vimeo, LLC,* 826 F.3d 78, 81 (2d Cir. 2016), *cert. denied,* 137 S. Ct. 1374 (2017); *Wolk v. Kodak Imaging Network, Inc.,* 840 F. Supp. 2d 724, 744 (S.D.N.Y. 2012), *aff'd sub nom. Wolk v. Photobucket.com, Inc.,* 569 F. App'x 51 (2d Cir. 2014) (noting that the DMCA's definition of "service provider" is "intended to encompass a broad set of Internet entities" including websites that "host[] and allow[] online sharing of photos").  A service provider that satisfies the DMCA's threshold requirements must also establish that it satisfies the criteria of Section 512(c)(1), namely that the material was stored "at the direction of a user" and that the service provider:

> (A) (i) does not have actual knowledge that the material or an activity using the material on the system or network is infringing;
> (ii) in the absence of such actual knowledge, is not aware of facts or circumstances from which infringing activity is apparent; or
> (iii) upon obtaining such knowledge or awareness, acts expeditiously to remove, or disable access to, the material;
>
> (B) does not receive a financial benefit directly attributable to the infringing activity, in a case in which the service provider has the right and ability to control such activity; and
>
> (C) upon notification of claimed infringement as described in paragraph (3), responds expeditiously to remove, or disable access to, the material that is claimed to be infringing or to be the subject of infringing activity.

17 U.S.C. § 512(c)(1)(A)-(C).  Here, Plaintiff's own exhibit establishes that fact. Cplt. ¶ 17, Ex. A at 2, Ex. C at 2.  Moreover. Plaintiff does not allege that Alamy had the requisite knowledge necessary to disqualify it from the DMCA's protection against infringement claims arising from user-generated content.  Nor does Plaintiff allege that Alamy failed to take certain acts that would similarly disqualify it from the DMCA's safe harbor provisions.

As a threshold matter, Plaintiff failed to submit a notice of infringement under the DMCA with respect to the Marley Photograph.  In order to hold an Internet service provider liable for copyright infringement, the DMCA requires that copyright owners follow the notice provisions set forth in Section 512(c)(1). *Capitol Records, Inc. v. MP3tunes, LLC*, 611 F. Supp.

2d 342, 346 (S.D.N.Y. 2009).  Plaintiff's claim with respect to the Bob Marley Photograph

should be dismissed for this reason alone.  *Id.* ("The DMCA requires that copyright owners

follow the notice provisions provided in 17 U.S.C. § 512(c)(1) – a DMCA 'Take Down Notice' –

in order to hold [I]nternet service providers liable for copyright infringement.") (citation

omitted).  Moreover, Plaintiff's "decision to forgo the DMCA notice protocol stripped [him] of

the most powerful evidence of a service provider's knowledge – actual notice of infringement

from the copyright holder."  *UMG Recordings, Inc. v. Shelter Capital Partners LLC*, 718 F.3d

1006, 1021-22 (9th Cir. 2013) (internal quotation marks omitted).  Nonetheless, as the Complaint

has effectively provided Alamy with notice, Alamy has acted expeditiously to remove the

Marley Photograph from its website.  *Compare* Kaplan-Peterson Decl., ¶ 2, Ex. 1 *and* ¶ 3, Ex. 2.[9]

Notwithstanding whether Alamy had actual or "red flag" knowledge of the alleged infringement

– which, for the reasons set forth in detail below, it did not – Alamy is still protected by the

DMCA by virtue of its expeditious removal of the Photograph in accordance with Sections

512(c)(1)(A)(iii) and (C).  *See Capitol Records, LLC,* 826 F.3d at 95 (a service provider "can still

qualify for the safe harbor if, after gaining the requisite mental state, it acted expeditiously to

disable access to the infringing content") (quoting Melville B. Nimmer & David Nimmer,

Nimmer on Copyright, at § 12B.04[A][1][d], n.145 (2015)); *UMG Recordings, Inc.*, 718 F.3d at

1023 (finding Veoh protected by DMCA safe harbor where it "promptly removed infringing

material when it became aware of specific instances of infringement.").

Given generous latitude, Plaintiff's focus on third party Superstock might be described as

an unsuccessful attempt to impute knowledge to Alamy, but the exhibit to the Complaint

---

[9] Indeed, Alamy has removed all of the Photographs from its website, contrary to Plaintiff's misrepresentations to the Court (*see* Dkt. No. 16 at 2).

depicting the Marley Photograph plainly demonstrates that the Photograph was not posted to Alamy's website by Superstock, but rather, by another user. [10] Without any "red flag" knowledge removing it from the protections of the DMCA safe harbor provisions, and as confirmed by the exhibit itself, Alamy cannot be held liable in connection with the Marley Photograph.

Even if Plaintiff's version of events were even remotely plausible, those facts are immaterial; after the Marley Photograph uploaded by Superstock was removed from Alamy's website, the DMCA imposed no obligation on Alamy to continue monitoring its website for subsequent uploads of the Marley Photograph. *See* 17 U.S.C. § 512(m).

Finally, insulation from suit based on the existence of third-party material on a platform is a central part of the DMCA. In recognizing that online entities would not be able to survive if they were exposed to liability for every claim of copyright infringement arising from material posted by third-party users, Congress enacted a detailed and balanced framework that immunizes from copyright infringement liability online businesses that comply with the requirements of that framework. *See* S. Rep. No. 105-190, at 20 (1998) (Congress enacted the DMCA safe harbor provisions in order to "provide[] greater certainty to service providers concerning their legal exposure for infringements that may occur in the course of their activities."); 144 Cong. Rec. H7074-03, H7095 (1998) (statement of Rep. Goodlatte) ("[I]f America's service providers are

---

[10] Plaintiff asserts that Superstock uploaded the Marley Photograph to Alamy's website pursuant to an agreement between Plaintiff and Superstock. Cplt. ¶¶ 10-12. Plaintiff claims that it subsequently terminated the agreement, and that Alamy was aware that it no longer had the right to license the Marley Photograph. *Id.* at ¶ 15. As an initial matter, Plaintiff concedes that Superstock was authorized to license Plaintiff's images through June of 2015. Moreover, following termination of the Superstock agreement, Alamy removed from its website those of Plaintiff's images that had been supplied to Alamy by Superstock. Plaintiff's assertion to the contrary is undermined by its own exhibit, which demonstrates that the Marley Photograph was neither uploaded by Superstock, nor uploaded to Alamy's website for licensing. *See* Ex. C at 2.

subject to litigation for the acts of third parties at the drop of a hat, they will lack the incentive to provide quick and sufficient access to the Internet."). Plaintiff's claims with respect to the Marley Photograph not only disregard the central goals and purposes of the DMCA, but are expressly prohibited by the DMCA's safe harbor provisions. Accordingly, Plaintiff's claims with respect to the Marley Photograph should be dismissed. *Cf. Teva Pharm. USA, Inc. v. Sandoz Inc.*, No. 09 CIV. 10112 KBF, 2013 WL 3732867, at *3 (S.D.N.Y. July 16, 2013) ("In the instant two cases, the safe harbor protections of § 271(e)(1) are affirmative defenses.

## CONCLUSION

For all of the foregoing reasons, Alamy Inc. respectfully requests that the Complaint be dismissed in its entirety with prejudice.

Dated: August 23, 2018

Respectfully submitted,

By:  /s/ Lindsay W. Bowen
Lindsay W. Bowen
Nancy E. Wolff
Brittany L. Kaplan-Peterson
Cowan, DeBaets, Abrahams
& Sheppard LLP
41 Madison Avenue, 38th Floor
New York, NY 10010
Telephone: (212) 974-7474
lbowen@cdas.com
nwolff@cdas.com
bkaplan@cdas.com

*Attorneys for Defendant Alamy Inc.*