UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
MICHAEL GRECCO PRODUCTIONS, INC.,

                     Plaintiff,

             - against -

ALAMY, INC.,

                     Defendant.
--------------------------------------------------------x

**MEMORANDUM & ORDER**

18-CV-3260 (PKC) (SMG)

PAMELA K. CHEN, United States District Judge:

On June 4, 2018, Plaintiff Michael Grecco Productions, Inc. ("Plaintiff" or "Grecco Productions") commenced this action for copyright infringement and violations of Section 1202(a) of the Digital Millennium Copyright Act ("DMCA") with respect to 27 copyrighted photographic images ("the Copyrighted Works"). (Complaint ("Compl."), Dkt. 1.) On September 27, 2018, Defendant Alamy, Inc. ("Defendant" or "Alamy") filed a motion to dismiss the complaint for failure to state a claim, arguing, *inter alia*, that Alamy was an improper defendant in this action and that the complaint failed to plausibly allege any copyright infringement or violation of the DMCA. (Defendant's Motion to Dismiss, Dkt. 25; Defendant's Brief ("Def.'s Br."), Dkt. 26.) For the reasons stated herein, Defendant's motion is denied in its entirety.

## BACKGROUND

Plaintiff Grecco Productions is a California-based photography studio owned and operated by Michael Grecco, a commercial photographer and film director. (Compl. ¶¶ 5, 7.) In its complaint, Plaintiff alleges that Defendant Alamy is a Brooklyn-based company that owns and operates the website, http://www.alamy.com ("the Alamy website"). (*Id.* ¶ 6, 8.) Through the Alamy website, Defendant allegedly "reproduces, displays, distributes, and purports to offer license rights to photographic images and other content[,] the copyrights in which are owned by

others." (*Id.* ¶ 8.) Defendant receives at least some portion of the fees paid by Alamy website customers to acquire license rights through the website. (*Id.*)

In 2012, Grecco Productions entered into two agreements, an Exclusive Contributor Agreement and a Non-Exclusive Contributor Agreement (collectively, "the Agreements") with a Florida-based company, RGB Ventures LLC d/b/a Superstock ("Superstock"). (*Id.* ¶ 10.) The terms of the Agreements granted Superstock limited licenses to certain materials in Grecco Productions' portfolio, including 1,700 copyrighted images. (*Id.* ¶¶ 10–11.) Among the materials licensed to Superstock were the 27 Copyrighted Works at issue in this case. (*Id.* ¶¶ 10–11, 17.)

The Agreements, in turn, authorized Superstock to sublicense Grecco Productions' images through specified agents, called "Third Party Distributors." (*Id.* ¶ 10.) Alamy is identified in the Agreements as a Third Party Distributor for Superstock. (*Id.*) According to Plaintiff, Superstock maintains a distribution agreement with Alamy, whereby Alamy obtains photographic images and other content licensed to Superstock for the purpose of reproducing, promoting, distributing, and sublicensing that content. (*Id.* ¶ 9.) Through this distribution agreement, Alamy obtained the Copyrighted Works. (*Id.* ¶ 15.)

On or about December 2, 2013, the Agreements were terminated. (*Id.* ¶ 13.) The terms of the agreement provided for an 18-month "Survival Term," which allowed Superstock and its Third Party Distributors, including Alamy, to continue exercising licensing rights in Plaintiff's materials for 18 months after the termination date. (*Id.* ¶ 14.) Through its status as a Third Party Distributor for Superstock, Alamy also retained the right to reproduce, display, distribute, and license the materials subject to the Agreements for this 18-month period. (*Id.* ¶ 15.) Based on the alleged termination date, the Survival Term would have expired on June 2, 2015. Nevertheless, Plaintiff

discovered that Alamy was reproducing, displaying, distributing, and offering to license the Copyrighted Works through the Alamy website as late as 2016. (*Id.* ¶ 20.)

As its first cause of action, Plaintiff Grecco Productions alleges that Defendant Alamy's continued display and offer to license the Copyrighted Works beyond the Survival Term constitutes infringement of a copyright in violation of 17 U.S.C. § 501. (*Id*. ¶¶ 20, 27.) In its second cause of action, Plaintiff alleges that Defendant placed visible watermarks, such as "Alamy," "alamy," and "a," on the Copyrighted Works in order to conceal its infringement and induce potential customers to believe that Defendant, not Plaintiff, held exclusive rights in them. (*Id.* ¶¶ 21–22, 35.) According to Plaintiff, this runs afoul of 17 U.S.C. § 1202(a), which prohibits, *inter alia*, the provision of false copyright management information ("CMI"). 17 U.S.C. § 1202(a)(1). As a remedy, Plaintiff seeks damages and a permanent injunction against Defendant and its agents further infringing on its rights in the Copyrighted Works. (*Id.* ¶¶ (a)–(k).)

## STANDARD OF REVIEW

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). The "plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citation omitted). Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on

its judicial experience and common sense." *Id.* at 679 (citation omitted); *Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d Cir. 2013).

In addressing the sufficiency of a complaint, courts are required to accept the well-pleaded factual allegations contained within the complaint as true, *Grandon v. Merrill Lynch & Co.,* 147 F.3d 184, 188 (2d Cir. 1998), but "need not credit conclusory statements unsupported by assertions of facts[,] or legal conclusions . . . presented as factual allegations," *In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371, 404 (S.D.N.Y. 2001) (citing *Papasan v. Allain,* 478 U.S. 265, 286 (1986)). At the pleadings stage, the Court must limit its inquiry to the facts alleged in the complaint, the documents attached to the complaint or incorporated therein by reference, and "documents that, while not explicitly incorporated into the complaint, are 'integral' to plaintiff's claims and were relied upon in drafting the complaint." *Id*. (citing *Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 44 (2d Cir.1991)).

## DISCUSSION

Defendant Alamy moves to dismiss this action pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, arguing that Plaintiff Grecco Productions has incorrectly named Alamy as the defendant in this lawsuit. In the alternative, Defendant argues that, even if it is a proper defendant in this action, Plaintiff's claims under 17 U.S.C. § 1202(a) must be dismissed because watermarks are not CMI within the meaning of the DMCA. Defendant further asserts that it is an Internet service provider under 17 U.S.C. § 512(c) and is thus immune from liability for the display of one of the Copyrighted Works, which it asserts to be user-generated content hosted on the Alamy website. The Court addresses these arguments in turn.

## I.	Identity of the Proper Defendant

As its principal argument, Defendant contends that the complaint must be dismissed in its entirety for failure to state a claim because Plaintiff has sued the wrong entity.  (Def.'s Br., at 7.) According to Defendant, it is merely a subsidiary of Alamy Ltd. ("UK Alamy"), an English corporation for which Defendant operates as a sales office that interfaces with U.S.-based customers.  (*Id.*)  Defendant maintains that it played no role in the copyright violations alleged in the complaint, as the Alamy website, on which the Copyrighted Works were allegedly displayed and marketed, is owned and operated by UK Alamy.  (*Id.*)  Defendant further argues that any amendment to name the proper party would be futile, as the Court would lack personal jurisdiction over UK Alamy.  (*Id.*, at 8–10.)  These arguments are without merit.

"[O]n a motion to dismiss, the [C]ourt must ask whether any set of facts consistent with [the] complaint would give the plaintiff a right to recover . . . ."  *United States ex rel. Lang v. Northwestern University*, No. 04-C-3290, 2005 WL 670612, at * 3 (N.D. Ill. Mar. 22, 2005).  The answer to this question cannot be, to paraphrase Defendant's submissions, "No, because the allegations are false."  To dismiss the complaint based on Defendant's motion, the Court would need to credit facts asserted by Defendant that are directly contradicted by the complaint.  These disputed facts include Defendant's alleged role in the operation of the Alamy website and the copyright infringements alleged in the complaint.  (*Compare* Compl. ¶¶ 8, 15, 20–23, *with* Def.'s Br., at 4, 7–8.)  In other words, Alamy's argument boils down to simple denial of the complaint's factual contentions and any wrongdoing.  While this argument may ultimately succeed at a later point in the litigation,[1] *e.g.*, after some discovery has occurred, it is not an appropriate ground on

---

[1] The Court notes that the Alamy website contains certain information that may corroborate Defendant's argument, but it would be improper for the Court to consider this information for its

which to dismiss the complaint at the pleadings stage. *See Survivor Productions, LLC v. Daimler*, No. 3:15-cv-01482-AA, 2016 WL 3032688, at *1 (D. Or. May 25, 2016) (finding a defendant's assertion in a motion to dismiss that a third-party was responsible for the acts alleged in the complaint was "a question of fact" incapable of resolution before discovery).

Alamy's contentions are distinguishable from the more common situation where a defendant argues on a motion to dismiss that a plaintiff has sued a *legally* improper party, *i.e.*, a defendant whose conduct is not governed by the statute that the plaintiff's cause of action arises under. *See, e.g.*, *Rumsfeld v. Padilla*, 542 U.S. 426, 439–40 (2004) (holding that under 28 U.S.C. § 2243 the proper respondent to a habeas petition is the petitioner's immediate physical custodian, not a supervisory official such as the Attorney General). In that situation, recovery would be impossible against the defendant solely because of the defendant's undisputed identity, not based on the truth or falsity of any allegation in the complaint. *Compare Steimel v. Sec'y of the U.S. Dep't of Educ.*, No. 89-C-1853, 1989 WL 135184, at *1 (E.D.N.Y. Oct. 31, 1989) (granting a motion to dismiss where the plaintiff "sued the wrong party" because neither the Administrative Procedure Act nor the Rehabilitation Act of 1973 provided a private cause of action for the conduct alleged in the complaint), *with Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 610 (9th Cir. 1992) (affirming summary judgment where the plaintiff's claim hinged on the defendant's ownership of a ski resort, but it was undisputed, after discovery, that the defendant was not an owner).

Thus, the Court finds that Plaintiff has adequately pleaded its causes of action against Defendant Alamy. In brief, the complaint alleges that, through the Alamy website, Defendant

---

truth at the pleadings stage, as it is beyond judicial notice. *Cf. Muller-Paisner v. TIAA*, 289 F. App'x 461, 466 n.5 (2d. Cir. 2008) (stating that judicial notice may be taken of a website "for the *fact* of its publication," but not for its contents) (emphasis added).

reproduced, distributed, displayed and held out the Copyrighted Works for license without legal right to do so, and that Defendant sought to cloak these actions by providing false CMI in the form of watermarks placed on the Copyrighted Works. If Plaintiff produces evidence establishing that Defendant—rather than or in concert with UK Alamy—engaged in these actions, then Plaintiff would be entitled to recover against Defendant under 17 U.S.C. § 501, *et seq.* and 17 U.S.C. § 1202(a). Whether Plaintiff has correctly identified the entity that actually engaged in the alleged conduct will be shown through discovery and, potentially, a trial. At this stage, the allegations in the complaint are sufficient to allow the case to proceed against Defendant.

The Court need not address the parties' dispute as to whether or not it could exercise personal jurisdiction over UK Alamy, which currently is not a party to this action. *See SerVaas Inc. v. Mills*, 661 F. App'x 7, 9 (2d Cir. 2016) (requiring a non-party's involvement in a live controversy before reaching the merits of a case). Accordingly, the Court declines to address this jurisdictional question unless and until Plaintiff files an amended complaint naming UK Alamy as a defendant.

## II.     Plaintiff's Claims Under Section 1202 of the DMCA

Count II of the complaint alleges that Defendant violated 17 U.S.C. § 1202(a) by placing watermarks, such as "alamy" and "a," on the Copyrighted Works displayed on the Alamy website. (Compl. ¶ 22.) Section 1202(a) of Title 17 of the United States Code provides, *inter alia*, that "[n]o person shall knowingly and with the intent to induce, enable, facilitate, or conceal [copyright] infringement (1) provide [CMI] that is false, or (2) distribute or import for distribution [CMI] that is false." 17 U.S.C. § 1202(a). Based on this text, the Court identifies three elements required to state a claim under § 1202(a). A plaintiff must allege (1) the provision or distribution of CMI; (2) that the defendant knew that the CMI was false; and (3) that the Defendant acted with the intent to

cause or conceal copyright infringement.  *Accord Krechmer v. Tantaros*, 747 F. App'x 6, 9 (2d Cir. 2018) ("In order to plead a violation of § 1202(a), plaintiff thus must plausibly allege that defendant knowingly provided false copyright information *and* that the defendant did so with the intent to induce, enable, facilitate, or conceal an infringement."); *Aaberg v. Francesca's Collections, Inc.*, 17-CV115 (AJN), 2018 WL 1583037, at *6 (S.D.N.Y. Mar. 27, 2018) ("[T]o state a claim under . . . § 1202(a), [the plaintiff] must allege that the defendant both knew that the CMI was false, and provided or distributed the false CMI with the intent to induce, enable, facilitate, or conceal infringement.").

Defendant does not dispute that in 2016 it had no copyright interest in the Copyrighted Works, so only the first and third elements are placed in dispute by Defendant's motion. Defendant's primary argument is that its alleged placement of watermarks on the Copyrighted Works does not satisfy the first element because the watermarks do not indicate authorship or copyright ownership and thus are not CMI.  (Def.'s Br., at 11.)  Rather, Defendant asserts, the watermarks identify "'the originator of the website' on which the photos appeared."  (*Id.*)  The Court disagrees.

Section 1202(c) provides the statutory definition of CMI as it is used in subsection (a) of the statute.  It defines CMI as follows:

> [A]ny of the following information conveyed in connection with copies or phonorecords of a work or performances or displays of a work, including in digital form, except that such term does not include any personally identifying information about a user of a work or of a copy, phonorecord, performance, or display of a work:
>
> (1) The title and other information identifying the work, including the information set forth on a notice of copyright.
> (2) The name of, and other identifying information about, the author of a work.
> (3) The name of, and other identifying information about, the copyright owner of the work, including the information set forth in a notice of copyright.
> . . .

(7) Identifying numbers or symbols referring to such information or links to such information.

17 U.S.C. § 1202(c).

Few courts have meaningfully interpreted § 1202(c), but most courts that have considered the issue have found that the meaning of CMI is broad and, at least in some circumstances, includes watermarks. The Honorable Theodore D. Chuang of the District of Maryland held in *Goldstein v. Metropolitan Regional Information Systems, Inc*. that CMI need not include all of the elements of a notice of copyright, but could be only a subset of those elements. No. TDC-15-2400, 2016 WL 4257457, at *7–8 (D. Md. Aug. 11, 2016); *see also* 17 U.S.C. § 401(b) (defining a notice of copyright as including (1) the symbol ©, the word "Copyright," or the abbreviation "Copr."; (2) the year of the first publication of the work; and (3) the name of the owner of the copyright or any recognizable abbreviation or alternative designation thereof). Consistent with this understanding of CMI, the Middle District of Tennessee held in *Executive Corp. v. Oisoon, LLC* that watermarked text on an image stating "The Executive Advertising" constituted CMI. No. 3:16-cv-898, 2017 WL 4310113, at *4 (M.D. Tenn. Sept. 28, 2017). Likewise, the Honorable William H. Pauley III of the Southern District of New York held that the notation of a photographer's last name next to a photograph on Twitter constitutes CMI. *Agence France Presse v. Morel*, 769 F. Supp. 2d 295, 305–06 (S.D.N.Y. 2011).

The Court agrees with this more expansive view of CMI. Because a watermarked corporate name or symbol may refer to the author or copyright owner when displayed on a copyrighted work in connection with the marketing of that work for sale or license, such watermarks do constitute CMI for the purpose of stating a violation of § 1202(a). *Accord* 17 U.S.C. § 1202(c)(2)–(3), (7). This conclusion is consistent with how courts have applied § 1202(b) of the DMCA, which prohibits the intentional removal or alteration of CMI without authorization from the copyright

owner and with the knowledge that the removal/alteration will induce or conceal infringement of a copyright.  17 U.S.C. § 1202(b).  For example, in *Myeress v. Elite Travel Group USA*, the Court found that the watermarked name of the copyright owner-plaintiff constituted CMI and that the alleged removal of the watermark by the defendant established a *prima facie* case for a § 1202(b) violation.  No. 18-CV-340 (AJN), 2018 WL 5961424, at *2 (S.D.N.Y. Nov. 14, 2018).  Accordingly, the Court finds that Plaintiff has alleged sufficient facts from which the Court can plausibly infer that the watermarks described in the complaint and shown in Exhibit C constitute CMI for the purpose of the alleged §1202(a) violation.

The cases cited by Defendant do not dictate a different result.  Defendant cites *Michael Grecco Photography, Inc. v. Everett Collection, Inc.*, 589 F. Supp. 2d 375, 387 (S.D.N.Y. 2008), another action brought by Plaintiff, in which the Honorable Colleen McMahon rejected Plaintiff's claim based on the placement of the defendant's logo on images to which Plaintiff held a copyright.  There, Judge McMahon found that the logo simply identified the defendant, Everett Collection, Inc. ("Everett"), as the originator of the website on which the images appeared.  *Id.* at 387–88.  However, Plaintiff's claim in that case was that the logo falsely designated the origin of the images in violation of § 43(a) of the Lanham Act.  *Id.* at 386–87; *see* 15 U.S.C. § 1125(a).  Indeed, in granting summary judgment on this issue, Judge McMahon described Plaintiff's Lanham Act claims as "no more than . . . *copyright infringement* disguised as Lanham Act claims."  *Everett Collection*, 589 F. Supp. 2d at 387 (emphasis added).  The facts of that case are even further distinguishable, as Plaintiff admitted in its 56.1 Statement that Everett's logo did not constitute a claim to be the author or copyright owner of the images at issue, and it acknowledged that Everett's website expressly stated that "Everett is not the copyright holder of the images."  *Id.*  Thus, the

holding in *Everett Collection* is consistent with the Court's holding here that Plaintiff has stated a claim for relief under 17 U.S.C. § 1202(a).

Defendant also cites to a case in which Alamy and others were accused of violating § 1202(a), *Highsmith et al. v. Getty Images (US), Inc. et al.*, No. 16 Civ. 5924 (JSR) (S.D.N.Y. Oct. 28, 2016). In that case, the Honorable Jed S. Rakoff granted Defendant's motion to dismiss all claims under § 1202(a). Though Judge Rakoff's order dismissing the plaintiff's claims stated that a memorandum explanation of the dismissal would be forthcoming, *see id.* at Dkt. 68, no such memorandum appears to have been published on the public docket. Thus, the Court cannot discern the reasons for dismissal in that case. Nevertheless, the Court finds *Highsmith* to be highly distinguishable, as the parties in that case disputed the nature of the plaintiff's copyrights in the images at issue because she had gifted all rights in the images to the United States Library of Congress. *Id.*, Dkt. 31, ¶ 4; *id.*, Dkt. 67, at 2–5.

Finally, Defendant cites the Second Circuit's decision in *Authors Guild, Inc. v. HathiTrust*, 755 F.3d 87, 95 (2d Cir. 2014), in which, Defendant argues, the panel authorized Defendant's display of low-resolution, watermarked copies of the Copyrighted Works on its website under the fair-use doctrine. (Def.'s Br., at 11.) But *Authors Guild* does not address Alamy's use of the watermarked images alleged in the complaint; it merely approves of an Internet search engine's display of "low-resolution versions of copyrighted images in order to direct the user to the website where the original [can] be found." 755 F.3d at 95. Furthermore, the Second Circuit constrained its fair-use holding in *Authors Guild* in an important way, stating that even if a particular use of the copyrighted work could fall under the fair-use doctrine, that use "must not excessively damage the market for the original by providing the public with a substitute for that original work." *Id.* This market competition damage is precisely what Plaintiff complains of here. (*See* Compl. ¶¶ 28,

35.)  Accordingly, even if the placement of watermarks on low-resolution copies of the Copyrighted Works could, under some circumstances, constitute a fair use, *Authors Guild* does not shield Defendant from liability at the pleadings stage of this case.

To the extent that Defendant challenges the adequacy of Plaintiff's pleading of the scienter elements of a § 1202(a) claim, the Court finds that Plaintiff has plausibly pleaded that Defendant acted with knowledge and intent in placing watermarks on the Copyrighted Works in order to conceal copyright infringement.  Rule 9 of the Federal Rules of Civil Procedure allows intent and knowledge to be alleged generally, and the Second Circuit requires district courts to be lenient in allowing scienter issues to survive motions to dismiss "because such issues are 'appropriate for resolution by the trier of fact.'"  *In re DDAVP Direct Purchaser Antitrust Litigation*, 585 F.3d 677, 693 (2d Cir. 2009) (quoting *Press v. Chem. Inv. Servs. Corp.*, 166 F.3d 529, 538 (2d Cir. 1999)).  Here, Plaintiff has alleged that Defendant was informed by Superstock that the Survival Term had expired, and that Defendant knew the expiration deprived it of the authority to further license and display the Copyrighted Works without further permission from Plaintiff.  (Compl. ¶¶ 15–16.)  Additionally, Plaintiff alleges that Defendant placed watermarks on the Copyrighted Works in order to facilitate its continued marketing and sale of licenses.  (*Id.* ¶¶ 20–23.)  While the truth of these allegations must be ascertained at a later stage of litigation, they are sufficient as stated to survive a motion to dismiss.

Because the Court finds that Plaintiff has adequately pleaded that (1) Defendant provided CMI that (2) it knew was false (3) for the purpose of concealing copyright infringement, the complaint states a claim for relief under § 1202(a) of the DMCA.  Accordingly, Defendant's motion to dismiss Count II of the complaint is denied.

### III. Immunity Under Section 512(c)

Finally, Defendant seeks to dismiss all of Plaintiff's claims with respect to one of the 27 Copyrighted Works, a photograph of Bob Marley registered with the Copyright Office under Registration Number VA 1-736-729 ("the Marley photograph"). Defendant argues that the exhibits attached to the complaint make clear that this photo was posted by a third-party participant in an online message board hosted on the Alamy website. (Def.'s Br., at 13.) Defendant claims that because Alamy is an Internet service provider within the meaning of 17 U.S.C. § 512(c), it cannot be held liable for copyright infringement claims arising from user-generated content. (*Id.*, at 14–16; citing 17 U.S.C. § 512(k)(1)(B) (defining an Internet service provider as, *inter alia*, "a provider of online services or network access, or the operator of facilities therefor").)

This defense is premature. Without addressing the merits of Defendant's claim that it is entitled to the protection of the DMCA's safe harbor provision for Internet service providers, the Court finds that Defendant's entitlement is not apparent on the face of the complaint or its attachments, even as to the Marley photograph. Defendant bases its motion to dismiss on a screenshot attached as part of Exhibit C to the complaint. (*Id.*, at 13–14; Exhibit C, Dkt. 1-3, at ECF [2] 2.) Yet the complaint expressly characterizes this exhibit as containing "exemplary screenshots or printouts," rather than detailing each instance of alleged copyright infringement. (Compl. ¶ 23.) While the screenshot referenced by Defendant does appear to show a user-generated post featuring the Marley photograph, this fact would not preclude liability for alleged instances where Defendant, rather than a user of the Alamy website, displayed the Marley photograph and offered copies for prospective license. *See Agence France Presse v. Morel*, 934

---

[2] Citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

F. Supp. 2d 547, 566 (S.D.N.Y. 2013) ("[A]n entity that is directly licensing copyrighted material online is not a 'service provider.'"), *reconsidered on other grounds by Agence France Presse v. Morel*, 934 F. Supp. 2d 584 (S.D.N.Y. 2013); *E. Broad. Am. Corp. v. Universal Video, Inc.*, No. CV-04-5654 (DGT), 2006 WL 767871, at *2 (E.D.N.Y Mar. 24, 2006) (denying a motion to dismiss in a copyright infringement action where the defendant was alleged to have used copyrighted material in a manner that exceeded the duration of a previously-granted license).

Defendant represents that it will prove through discovery that it is immune from liability as an Internet service provider in each alleged instance of copyright infringement involving the Copyrighted Works. (Def.'s Br., at 13 n.6.) Whether or not this defense proves accurate, Defendant must follow the same course vis-à-vis the Marley photograph.

Because the complaint clearly alleges that the screenshot in Exhibit C was merely one of multiple displays of the Bob Marley photo, and because Defendant cannot establish on a motion to dismiss that it is an Internet service provider within the meaning of 17 U.S.C. § 512(c) for all purposes relevant to the complaint, Defendant's motion to dismiss all claims relating to the Marley photograph is denied.

## CONCLUSION

For the reasons stated, Defendant's motion to dismiss is denied.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: March 12, 2019
　　　　Brooklyn, New York