

COWAN,
DEBAETS,
ABRAHAMS &
SHEPPARD LLP

41 MADISON AVENUE
NEW YORK, NY 10010
T: 212 974 7474
F: 212 974 8474
www.cdas.com

NANCY E. WOLFF
212 974 7474
NWOLFF@CDAS.COM

December 23, 2019

**VIA CM/ECF**
Magistrate Judge James Orenstein
225 Cadman Plaza East
Room 1227 South
New York, New York 11201

Re: *Michael Grecco Productions Inc. v. Alamy Inc.*, Case No. 18 Civ. 03260 (PKC) (JO)

Dear Judge Orenstein:

On behalf of defendants Alamy Inc. ("US Alamy") and Alamy Ltd. ("UK Alamy," together with US Alamy, "Defendants"), we respectfully submit this letter in response to plaintiff Michael Grecco Productions Inc.'s ("Plaintiff") pre-motion letter, dated December 18, 2019 (Dkt. 68), concerning its intended motion to compel privileged communications between UK Alamy and its undersigned attorneys, as well as certain documents that have already been produced by US Alamy and/or that US Alamy has already indicated are forthcoming. For the reasons set forth below, Plaintiff's motion should be denied in its entirety.

**1. The Crime-Fraud Exception Does Not Apply**

Under the crime-fraud exception, attorney-client privilege is "to be invaded when it is abused for purposes of engaging in fraud." *Danisco A/S v. Novozymes A/S*, 427 F.Supp.2d 443, 445 (S.D.N.Y. 2006). *See also In re Richard Roe, Inc.*, 168 F.3d 69, 71 (2d Cir. 1999) ("Roe 1999") ("Given that the attorney-client privilege [] play[s] a critical role in our judicial system, the limited exceptions [] should not be framed so broadly as to vitiate much of the protection afford[ed]") (internal citations omitted). The crime-fraud exception "is aimed at serious misconduct," *Danisco*, 427 F.Supp.2d at 445 (declining to apply crime-fraud exception), and can be invoked only if a party can demonstrate that (1) there is "probable cause to believe that a fraud or crime has been committed"; and (2) that "the communications in question were in furtherance of the fraud or crime." *In re Fresh Del Monte Pineapple*, No. 04MD1628(RMB)(MHD), 2007 WL 64189, at *3 (S.D.N.Y. Jan. 4, 2007) (citations omitted). *See In re Grand Jury Investigation*, 399 F.3d 527, 535 (2d Cir. 2005) (crime-fraud exception is meant "to limit egregious abuses").

**A. An Inadvertent Omission is Not a Fraud or Crime**

As a threshold matter, Plaintiff cannot even identify a fraud or crime that has been committed. When the instant action was filed, on June 4, 2018, a license agreement appeared on the UK Alamy website (the "Website") – which had appeared on the Website from May 23, 2018 through September 18, 2018 – that governed the terms of any licenses granted during that timeframe (the "May 2018 Agreement"). On August 2, 2018, Plaintiff acknowledged the existence of the May

COWAN,
DEBAETS,
ABRAHAMS &
SHEPPARD LLP

2018 Agreement, explicitly referencing and quoting from it in a letter to the Court.[1] Realizing that the May 2018 Agreement did not accurately reflect the commercial realities of the transactions on the Website, the agreement was updated in September of 2018 (the "September 2018 Agreement"). Plaintiff would seemingly like to penalize UK Alamy, a living, breathing company, for improving the accuracy of its agreements just because litigation is ongoing.

In US Alamy's July 17, 2019 discovery responses, drafted after the September 2018 agreement went live on the Website, it erroneously identified the September 2018 Agreement as governing the invoices at issue. At worst, this was an inadvertent mistake that is easily explained: Once a license agreement is removed from the Website, it no longer appears on the Website, and none of the license agreements appearing on the Website bear any dates or distinguishing features aside from the small edits that are made to each version. Nonetheless, at all times, Plaintiff was acutely aware that multiple versions of the agreements existed. Plaintiff's counsel waited until the deposition of US Alamy's General Manager to raise the discrepancy. Once it was brought to US Alamy's attention, its production was supplemented without delay prior to the close of discovery.

The conduct Plaintiff accuses US Alamy of – namely, producing the September 2018 Agreement and then further supplementing its production within the discovery period – does not rise to the level of "[f]raud upon the court." *See King v. First Am. Investigations. Inc.*, 287 F.3d 91, 95 (2d Cir. 2002) ("Fraud upon the court should embrace only that species of fraud which does or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases.") (internal citations and quotations omitted); *see also Gleason v. Jandrucko*, 860 F.2d 556, 557 (2d Cir. 1988) (nondisclosure does not support a finding of "fraud upon the court"); *Zimmerman v. Poly Prep Country Day Sch.*, No. 09 CV 4586 FB, 2011 WL 1429221, at *38 (E.D.N.Y. Apr. 13, 2011) (failure to disclose material during pretrial discovery is not fraud on the court).

**B. There is No Reason to Believe the Privileged Communications Were Made in Furtherance of the Purported Fraud**

Even assuming *arguendo* that a fraud was committed, which US Alamy vehemently denies, Plaintiff falls woefully short of showing the "requisite purposeful nexus" between the communications and the purported fraud. *See In re Grand Jury Subpoenas Duces Tecum*, 798 F.2d 32, 34 (2d Cir. 1986) (reversing compulsion order and noting that "a temporal nexus does not support a finding that [] communications were in furtherance of [purported] crimes"); *see also In re Grand Jury Subpoena Duces Tecum*, 731 F.2d 1032, 1039 (2d Cir. 1984) (the crime or fraud must "have been the objective of the client's communication"); *In re Richard Roe, Inc.*, 68 F.3d 38, 40–41 (2d Cir. 1995) ("Roe 1995") ("a simple finding of relevance does not demonstrate a criminal or fraudulent purpose, it does not trigger the exception"). Indeed, the court in *Roe 1995*, cited by Plaintiff, described how the "in furtherance test" applied in the crime-fraud exception

[1] *See* Dkt. 15 ("The website further instructs users that the 'Alamy License Agreement' being offered for images found on the website – which included Plaintiff's Copyrighted Works – 'is a legal agreement (the 'Agreement') between you . . . and Alamy Inc.'").





context is a much more stringent standard than the "relevant evidence test." *Id.* at 40 (opining that if the exception applied because communications *could* be relevant, "the privilege would be virtually worthless"); *see also Roe 1999*, 168 F.3d at 72 (maintaining privilege).

**2. US Alamy Continues to Make Good-Faith Efforts to Comply with Discovery**

As Plaintiff references in its letter, the parties met and conferred on December 9, 2019, and discussed Plaintiff's demand for production of the aforementioned privileged documents and communications relating to the license agreements that were not the subject of Plaintiff's crime-fraud exception theory.[2] Additionally, Plaintiff requested the identification of individuals named in US Alamy's privilege log, which was provided to Plaintiff's counsel with hours. US Alamy's counsel further stated that it would confirm whether there were any additional communications regarding the other license agreements, as discussed in the meet and confer. On the same day, US Alamy began the process of confirming same, a burdensome task given that many non-responsive documents are contained in search results for the term "license agreements" – particularly when every transaction involves a "license agreement." Without first confirming that US Alamy did not intend to produce the referenced documents – which US Alamy had indicated were forthcoming[3] – Plaintiff filed the instant letter regarding its intended motion to compel.

With respect to the "gaps in the License Agreements produced" that Plaintiff references in his letter, had Plaintiff discussed the matter during the meet and confer, US Alamy would have explained that it produced the April 18, 2016 (through December 4, 2016), June 21, 2017 (through March 21, 2018), and May 23, 2018 (through September 18, 2018) license agreements because they were responsive to the extent Plaintiff sought all "[l]icensing agreements between Alamy Ltd. or Alamy Inc. and third parties concerning the photographs at issue"). US Alamy's counsel's understanding is that the only relevant invoices bear dates of May 25, 2016, August 26, 2017, and June 15, 2018, so the other agreements would not have been responsive. However, in an effort to avoid wasting the Court's resources over this issue, US Alamy produced the supplemental documents on December 19, 2019.

We thank the Court for its patience and attention to this matter.

Respectfully Submitted,

/s/ Nancy E. Wolff
Nancy E. Wolff

*Counsel for Defendants Alamy Inc. and Alamy Ltd.*

---

[2] To date, Plaintiff has aggressively pursued communications specifically relating to the May 2018 Agreement and September 2018 Agreement, which were the subject of a document preservation demand sent to US Alamy on September 24, 2019.

[3] If any further documents are located, US Alamy intends to supplement its production and provide a revised privilege log before the upcoming status conference. To the extent any documents located are subject to the attorney-client privilege, US Alamy reserves the right to withhold such documents.