```
 1                        UNITED STATES DISTRICT COURT
                          EASTERN DISTRICT OF NEW YORK

 2   --------------------------------------X
                                           :
 3   MICHAEL GRECCO PRODUCTIONS, INC.,     :
                                           : 18-CV-03260 (PKC)(JO)
 4              Plaintiff,                 :
                                           :
 5         v.                              :
                                           : January 13, 2020
 6   ALAMY, INC.,                          :
                                           : Brooklyn, New York
 7              Defendant.                 :
                                           :
 8   --------------------------------------X

 9
            TRANSCRIPT OF CIVIL CAUSE FOR STATUS CONFERENCE
10              BEFORE THE HONORABLE JAMES ORENSTEIN
                   UNITED STATES MAGISTRATE JUDGE
11

12   APPEARANCES:

13
     For the Plaintiff:         STEVEN COWLEY, ESQ.
14                              Duane Morris LLP
                                100 High Street, Suite 2400
15                              Boston, Massachusetts 02110

16
     For the Defendant:         LINDSAY EDELSTEIN, ESQ.
17                              NANCY WOLFF, ESQ.
                                Cowan DeBaets Abrahams & Sheppard
18                              LLP
                                41 Madison Avenue, 38th Floor
19                              New York, New York 10010

20
     Court Transcriber:         SHARI RIEMER, CET-805
21                              TypeWrite Word Processing Service
                                211 N. Milton Road
22                              Saratoga Springs, New York 12866

23

24

25

     Proceedings recorded by electronic sound recording,
     transcript produced by transcription service
```

```
                                                                     2
 1    (Proceedings began at 11:31 a.m.)
 2              THE CLERK:  Civil cause for a status conference,
 3    Michael Grecco Productions, Inc. v. Alamy, Inc., Docket No.
 4    18-CV-03260.
 5              Would you all please state your appearances for the
 6    record starting with the plaintiff?
 7              MR. COWLEY:  Good morning, Your Honor.  Steven
 8    Cowley from Duane Morris for the plaintiff Michael Grecco
 9    Productions.
10              THE COURT:  Good morning.
11              MS. EDELSTEIN:  Good morning, Your Honor.  It's
12    Lindsay Edelstein from Cowan DeBaets Abrahams & Sheppard on
13    behalf of defendants Alamy, Inc. and Alamy, Limited.
14              THE COURT:  Good morning.
15              MS. WOLFF:  Nancy Wolff from the same firm.
16              THE COURT:  Good morning.
17              MS. WOLFF:  Good morning.
18              THE COURT:  All right.  Folks, I have your exchange
19    of letters.  Okay.  You had two issues.  I got the impression
20    that you resolved one of them about the production of certain
21    documents?
22              MR. COWLEY:  There was a production Friday night
23    that I can't review, so I will just leave it to counsel to
24    make a representation as to what's included.  I can't say one
25    way or the other.
```

```
 1                THE COURT:  Okay.
 2                MS. EDELSTEIN:  Yes.  And we produced what was asked
 3   for in the second request which --
 4                THE COURT:  Okay.
 5                MS. EDELSTEIN:  Yeah.
 6                THE COURT:  So it's really -- assuming that's true
 7   and if it's not, you'll let me know.
 8                MR. COWLEY:  Of course.
 9                THE COURT:  Okay.  We're not in a position to
10   discuss that further.  And so it's down to the request for
11   what's on the privilege log.
12                MR. COWLEY:  Your Honor, I need to make you aware
13   that on Friday night, I also learned that the privilege log
14   issue is very different as of this morning.
15                THE COURT:  Okay.
16                MR. COWLEY:  A new privilege log was produced this
17   time with 82 documents listed on it regarding the documents
18   withheld, many of them the same documents that were -- many of
19   them relate to the same documents that we referred to in the
20   first 13, some of them to the new documents.  May I hand that
21   up?
22                THE COURT:  Yeah, okay.  Do I have the earlier logs?
23                MR. COWLEY:  It's Exhibit 5 to my letter motion.
24                THE COURT:  Okay, thanks.
25                MR. COWLEY:  I do not have good access to a color
```

4

1   printer, so what I attempted to highlight in yellow actually
2   comes out gray.
3           THE COURT:  Okay.
4           MR. COWLEY:  And it's black and white print.  But
5   that was my add.  That wasn't --
6           THE COURT:  Got it.
7           MR. COWLEY:  I'll explain when we get to it why.
8           THE COURT:  Okay.  Well, is there a disagreement
9   that there's a new and materially different privilege log?
10          MS. EDELSTEIN:  No, there's no dispute.  We --
11          THE COURT:  Why is that?
12          MS. EDELSTEIN:  Because in the supplemental
13  production, we produced a lot more communications pertaining
14  not only to the 2018 agreement which was the subject of the
15  prior motion to compel but prior versions of the license
16  agreement changes not -- made because of GDPR compliance and a
17  lot of other issues.  We're counsel To Alamy Limited, so there
18  are many license agreement issues that come up over a period
19  of three years.
20          THE COURT:  Okay. All right.  Well, so I've been
21  looking at the document you've handed up.  The highlighted
22  ones are the ones that were initially on the log, correct,
23  whereas these are the new ones?
24          MR. COWLEY:  No, 1 through 13 were initially on the
25  log.  The highlighted ones or the ones I attempted to

1  highlight where everyone that I found where the new claim of
2  privilege --
3           THE COURT:  Okay.
4           MR. COWLEY:  -- work product.  And just to point
5  out, Your Honor, a rough estimate --
6           THE COURT:  Oh, I get it.
7           MR. COWLEY:  -- 70 percent of this related to the
8  same documents at issue in the first log, the 2018 documents,
9  just by the date.  I don't know the content anymore than
10 what's said here.
11          THE COURT:  Well --
12          MR. COWLEY:  So the reason I tried to highlight --
13          THE COURT:  Yeah.
14          MR. COWLEY:  -- that is I don't think there's any
15 possible dispute that the defendant cannot claim that some of
16 the documents relating to the 2018 new license agreement --
17          THE COURT:  The September one?
18          MR. COWLEY:  Yes.
19          THE COURT:  Okay.
20          MR. COWLEY:  -- were prepared to deal with this
21 litigation.  As they say in their opposition letter, it was a
22 simple correction.  It had nothing to do with this litigation.
23 It was a mistake not to produce it.  But they're claiming work
24 product with regard to a number of the communications about
25 that very change, that very new license.  You can't both claim

6

1  that they were preparing for this litigation and it had
2  nothing to do with this litigation.  And they are claiming
3  both.
4          THE COURT:  Well, wait, wait, wait.  Does the -- I'm
5  just seeing it now for the first time, obviously, but does it
6  say that it's related to this litigation or in anticipation of
7  litigation?
8          MR. COWLEY:  Well, fair point.  I haven't gotten any
9  more than this.  We tried -- we started to discuss --
10         THE COURT:  Right.
11         MR. COWLEY:  -- out in the hall the new agreement,
12 but we only had about five minutes.
13         THE COURT:  Okay.  Well, is the assertion of
14 privilege, the work product privilege, based on relation to
15 this litigation?
16         MS. EDELSTEIN:  Yes.  And I can give some background
17 that would be helpful on that entire issue which is that
18 plaintiff in Docket No. 15 referenced this agreement that they
19 claim that we're trying to hide.  They referenced it in papers
20 in this litigation.  That brought to our attention the fact
21 that the language wasn't reflecting the commercial reality.
22 It's because of this letter that we started working with our
23 client to improve the agreement.  There was no fraud, there
24 was no conspiracy.  And you --
25         THE COURT:  Wait, wait, wait.  But --

7

1        MS. EDELSTEIN:  Okay.  Sorry.
2        THE COURT:  -- but the fraud is not changing the
3   agreement.  The fraud, as I understand it, is producing the
4   wrong one, correct?
5        MS. EDELSTEIN:  That is what plaintiff alleges.  And
6   --
7        THE COURT:  Right.  But you're saying it's not fraud
8   because -- you're addressing a different allegation than the
9   one that's being made which doesn't help your cause.
10       MS. EDELSTEIN:  Yes.
11       THE COURT:  And, look, in essence, the fraud
12  allegation, if I understand it, is you knew you had changed
13  this and yet you gave the wrong one.  Fair enough?  I don't
14  want to put words in your mouth.
15       MR. COWLEY:  Yes, Your Honor.
16       THE COURT:  So, and that's sort of the point.  If
17  you're asserting work product for something that you changed
18  for the changes that you made, you know, the process of
19  changing it where the basis for the assertion of privilege is
20  we were doing it because of this litigation.  It's hard to
21  square that with the idea that when you produced the wrong
22  one, you didn't realize that you were producing something that
23  had been changed as a result of the litigation.
24       MS. EDELSTEIN:  Yes, Your Honor.  I can understand
25  that point of view.  But the issue is it was inadvertently

8

1  produced and the reason is because the 2018 version of license
2  agreement is the one that was live on the website at the time.
3  There's no dates on it, and the associate produced that --
4           THE COURT:  The associate didn't produce it.  The
5  associate may have given it to counsel of record who knew
6  about it because they were involved in the change, right?  So,
7  the people who actually gave over the changed document knew
8  that it had been changed.
9           MS. EDELSTEIN:  They might have known that it had
10 been changed by virtue of having had the correspondence, but I
11 think in the context of producing the actual documents in
12 response to the document request asking for the license
13 agreements pertaining to those images, there was a mistake.
14          THE COURT:  But, look, at some point you folks in
15 producing it knowing that you've changed the document you're
16 producing because of this litigation had to have known that
17 one thing to look out for is, wait, is this the one that's at
18 issue here or the one that we've produced because of the
19 litigation here.  Nobody thought to do that?
20          MS. WOLFF:  I think the change was very minimal and
21 there was no dates and it was just a confusion in versions.
22          THE COURT:  Question though.
23          MS. WOLFF:  It just was -- it just slipped through
24 the cracks.  No one was aware.  I'm sorry.
25          THE COURT:  This is off topic, but, you know, every

1  time the national debt ceiling comes up as a political issue,
2  it occurs to me that we could have one -- literally a one-word
3  change to the U.S. Code and wipe out the issue forever, you
4  know, just putting the word "not" into a statute.
5              So it may have been a very small change, but
6  obviously you did it for a reason in response to this
7  litigation.  It had import even if it was a small change and
8  it was one that you guys worked on.  So you know that there
9  are two versions out there.  Whether or not you're aware that
10 there's, you know, dates on them or not, you know that there
11 are two versions out there.  How are you not checking to make
12 sure you've got the right one when you produce it?
13             MS. WOLFF:  It was an error that the associate made,
14 and it wasn't caught and that's all I can say.
15             THE COURT:  Wait.
16             MS. WOLFF:  It's --
17             THE COURT:  It may be that it wasn't caught, but you
18 can't just say, oh, blame the associate.  You know, this is
19 your job.
20             MS. WOLFF:  I understand and because there was no
21 date on either one, I just didn't know it was the wrong one.
22 That's all.
23             THE COURT:  What are you worried about producing?
24 In other words, leaving aside the standard and I get that's a
25 real issue, but is there anything there that you'd actually

```
                                                                  10
 1   worry about them seeing?
 2             MS. WOLFF:  It's our attorney -- you know, I don't
 3   want to waive the privilege and I don't want to waive our work
 4   product.
 5             THE COURT:  Yeah, I get that and that was built into
 6   the question.
 7             MS. WOLFF:  He had an opportunity --
 8             THE COURT:  So, wait, wait, wait, wait.  Ms. Wolff -
 9   --
10             MS. WOLFF:  I'm sorry.
11             THE COURT:  -- you heard me build it into the
12   question.
13             MS. WOLFF:  Yes.
14             THE COURT:  So I'd be so grateful if when you answer
15   a question, you actually answer the question I asked and not
16   the question that I made clear I wasn't asking.  Want to try
17   again?
18             Okay, don't.  Look --
19             MS. WOLFF:  I --
20             THE COURT:  -- at a minimum --
21             MS. WOLFF:  -- I don't have the documents in front
22   of me at the moment.
23             THE COURT:  Why not?  This is what we're fighting
24   about.
25             MS. WOLFF:  I didn't --
```

```
                                                                    11
 1                THE COURT:   Okay.  All right.
 2                MS. WOLFF:   I didn't bring them.
 3                THE COURT:   I assume you've reviewed them.
 4                MS. EDELSTEIN:   Yes, Your Honor.
 5                MS. WOLFF:   Yes, Your Honor.
 6                THE COURT:   I assume that you know what you're
 7   fighting over, you know -- at a minimum, you know whether
 8   there's something other than a principle at stake here, right?
 9                MS. WOLFF:   Yes.
10                THE COURT:   Having reviewed them, you'd know
11   something to actually worry about being misused or it's just
12   really the principle.  Are you saying it's purely the
13   principle and there's nothing to worry about?
14                MS. WOLFF:   I don't think there's anything to worry
15   about, but I --
16                THE COURT:   You don't want to waive the principle.
17                MS. WOLFF:   -- I think could we review them in
18   camera with you?  I don't -- I feel very uncomfortable waiving
19   any privilege.
20                THE COURT:   Okay.  Well, look, that was going to be
21   the next question.  I think based on what I have now, I don't
22   think frankly you've met the standard for probable cause that
23   would satisfy the Roe standard for producing them.  But --
24                MR. COWLEY:   May I say something --
25                THE COURT:   Yeah.
```

```
                                                                12
 1               MR. COWLEY:  -- on that very limited -- it was
 2   beyond just producing it accidentally.  There was an initial
 3   disclosure where they were -- their obligation is to identify
 4   the documents that support their claim.  Their claim was
 5   solely this, you sued the wrong offender.
 6               THE COURT:  Yeah, I get it.  But, look --
 7               MR. COWLEY:  So to say that we're producing that
 8   because it is the document that supports our case and not --
 9               THE COURT:  Right, but how do we know it's not a
10   mistake?  What seems to me entirely plausible if, poor
11   practice, I know.  In your letter, you say they suggested at
12   the conference they didn't know about it.  I didn't find that
13   and you didn't put in any transcript.  I don't recall that.
14               MR. COWLEY:  I didn't buy the transcript.
15               THE COURT:  Okay.  Well, then next time --
16               MR. COWLEY:  But I took the notes.
17               THE COURT:  Then next time buy a transcript because
18   I don't recall it and honestly, my law clerk listened to the
19   entire conference and didn't hear it.  So, but maybe that
20   would make a difference in probable cause.  I'm not sure, but
21   I don't think you've made a case for probable cause.
22               I do think though that there's a lower standard that
23   has been met here for in camera review, and I don't hear you
24   -- I don't want to put words in your mouth, but I don't hear
25   you objecting to that at this point.
```

13

1     MS. WOLFF:  No, I don't object.
2     THE COURT:  Okay.  So let's -- go ahead.
3     MR. COWLEY:  May I just ask for one additional piece
4  of information to help that review can help my -- if I'm ever
5  going to respond to that position.  I've asked that all the
6  new names, and I'll explain what I mean by that, on this new
7  privilege log be identified, who are they, there do they come
8  from?  Only one name that wasn't an officer of the company was
9  identified.  There's a number of other names on here that
10 defense counsel can't even identify yet.
11    THE COURT:  What do you mean?  Give me an example so
12 --
13    MR. COWLEY:  Well, the way this works is I think
14 each entry -- unfortunately it prints without lines, but if
15 you read across --
16    THE COURT:  Yes.
17    MR. COWLEY:  -- the bottom line and up is the "To"
18 in the "CC".  So in the "To" and "CC" ones -- columns, I'm
19 sorry, not columns, rows --
20    THE COURT:  Yes.
21    MR. COWLEY:  -- that have multiple names, a number
22 of the names we recognize.  They are the officers of the
23 company.  They were identified before --
24    THE COURT:  Oh, okay.  So it's just there's some
25 names.  There are names there.  You just don't know who they

                                                                    14

1    are?
2              MR. COWLEY:  And one was identified this morning as
3    an HR consultant so outside the company.  And other names
4    haven't been identified at all, counsel has to look into it.
5              THE COURT:  Okay.  Well, you'll --
6              MR. COWLEY:  And my request is, first of all, I
7    don't think they should be claiming privilege without already
8    having done that, but they did.  They should identify who
9    these people are so that you know when you're doing this in
10   camera review how many of these documents were circulated
11   outside the company already but just not us.
12             THE COURT:  Well, is there any possibility that
13   anyone in the "To" or "CC" line is outside the company?
14             MR. COWLEY:  Well, the HR consultant certainly is.
15   And I didn't recall which one her name is.  I can look it up
16   on my e-mail.
17             THE COURT:  Is that right?
18             MS. EDELSTEIN:  Your Honor, she has an "at
19   alamy.com" e-mail address, I believe.  And I believe --
20             THE COURT:  Well, but that -- I have a gmail.com
21   address, but I don't work for Google.  If somebody is not
22   employed by the company, there's a very different privilege
23   argument, no?
24             MS. EDELSTEIN:  Yes, Your Honor.  I --
25             THE COURT:  Okay.  So that a reasonable request I

15

1  think.
2              MS. EDELSTEIN:  Okay.  Yeah.  No, and I already gave
3  plaintiff's counsel the identity of three of them, I believe,
4  and I said that after consulting with my client which we
5  should be able to get you by the end of the day, I can
6  identify all the individuals.
7              THE COURT:  Okay.  So, look, there are going to be
8  some that you withdraw the privilege assertion because you
9  can't make it, right?
10             MS. EDELSTEIN:  Correct.
11             THE COURT:  Okay.  The rest you'll give to me for in
12 camera review.  The ones that you withdraw, you'll give to
13 him, and you'll identify everybody, okay?
14             MR. COWLEY:  Thank you, Your Honor.
15             MS. EDELSTEIN:  Thank you, Your Honor.
16             THE COURT:  Okay.  When do you think you can have
17 that to me?
18             MS. EDELSTEIN:  The identity of the individual --
19             THE COURT:  The documents after you've -- because,
20 look, you're going to give me a subset of these documents
21 because some -- the other subset you're going to give over
22 after you identify people who are outside the company.
23             MS. EDELSTEIN:  Okay.
24             THE COURT:  For those that remain, you're going to
25 give them to me.  I'm asking when you think you'll have them

```
                                                                  16
 1   to me?
 2                MS. EDELSTEIN:   Would this Friday work for you?
 3                THE COURT:   Yes.
 4                MS. EDELSTEIN:   Okay.
 5                THE COURT:   Any objection?
 6                MR. COWLEY:   None, Your Honor.
 7                THE COURT:   So I'll get those by Friday and I think
 8   all I can do is say I'll schedule further proceedings as
 9   needed after I've reviewed them.   But, you know, what I'll be
10   looking for -- and let me leave it at this.   I'm going to be
11   looking for anything that suggests not only an intention to
12   change the document but essentially to hide the change or not
13   inform the plaintiff.   Fair enough?   Anything else you suggest
14   would be the fraud?
15                MR. COWLEY:   Right.   The fraud is the affirmative
16   representation to us that they were the licenses at issue when
17   they knew they weren't.
18                THE COURT:   Right.   So anything in support of the
19   misrepresentation, but if it's -- but if everything I see
20   there is, look, here's how we're changing this in response to
21   the lawsuit, I don't think that gets us any further in terms
22   of the fraud.   It would have to be something that says when
23   they said here's the right one that was an intentional
24   misrepresentation.
25                MR. COWLEY:   I understand.   I just don't believe it
```

17

1  arises to the level of smoking gun.  But I do think I've got
2  your point and agree with Your Honor --
3            THE COURT:  But I'm asking what else would I be
4  looking for?  On the one hand, there's here's how we should
5  change the document.  I don't think that gets you what you're
6  trying to prove.  On the other extreme is let's make sure the
7  plaintiff never sees this change.
8            MR. COWLEY:  I agree.
9            THE COURT:  What's in the middle that I should be
10 looking for?
11           MR. COWLEY:  This is how we need to change the
12 document in order for us to argue to the Court Alamy, Inc.
13 can't be sued.  They got to go to England and sue Alamy, Ltd.
14 Anything along those lines because they were setting up the
15 very defense that they then went to Judge Chen, argued and
16 said look at the website, it supports us.
17           THE COURT:  Would you be saying that if it said we
18 need to support the defense it wouldn't be supporting the
19 plaintiff's position or -- because I assumed that these
20 changes are prospective.  In other words, the plaintiff in
21 this case misinterpreted what's going on.  We want to make
22 sure we don't get that kind of lawsuit again.  But if it's --
23           MS. WOLFF:  It actually --
24           THE COURT:  -- in anticipation of supporting the
25 defense --

18

1               MS. WOLFF:  It actually just was commercially
2   inaccurate.  And so it needed to be changed and Mr. Schilizzi
3   testified to that at his deposition already when he was
4   questioned.  And to be fair, Mr. Cowley already had the early
5   agreement so there is -- and that's how they were aware of it.
6               THE COURT:  Again, Ms. Wolff, really not responsive
7   to the question, but I understand what you're --
8               MS. WOLFF:  All I'm saying is there's no surprise.
9               THE COURT:  -- I understand what you're looking for.
10  I understand what you're looking for.  I'd be grateful going
11  forward, as I think I've said before, if when I ask a
12  question, I get an answer to that question, not the one you'd
13  prefer to have me focus on.
14              All right.  I'll get the documents by Friday.  And
15  then I'll either rule on the motion or bring you back in to
16  discuss it further.
17              MR. COWLEY:  Thank you, Your Honor.
18              THE COURT:  Thank you all.
19              MS. EDELSTEIN:  Thank you, Your Honor.
20              MS. WOLFF:  Thank you.
21  (Proceedings ended at 11:49 a.m.)
22                         * * * * * *
23
24
25

```
                                                                    19
 1      I certify that the foregoing is a court transcript from
 2 an electronic sound recording of the proceedings in the above-
 3 entitled matter.
 4
                              Shari Riemer
 5                           _____
 6                            Shari Riemer, CET-805
 7 Dated:  January 15, 2020
```