```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
MICHAEL GRECCO PRODUCTIONS INC.,                 MEMORANDUM
                         Plaintiff,              AND ORDER
            - against -
ALAMY INC., et al.,                              18-CV-3260 (PKC) (JO)
                         Defendants.
-------------------------------------------------------------X
```

James Orenstein, Magistrate Judge:

Plaintiff Michael Grecco Productions, Inc. ("Grecco"), has accused defendants Alamy, Inc. and Alamy, Ltd. (collectively, "Alamy") of infringing its copyrights in violation of federal law. *See* DE 57 (Amended Complaint). Grecco now seeks to compel Alamy to produce certain documents responsive to Grecco's discovery requests that Alamy has withheld on the basis of attorney-client communications and attorney work-product privileges. *See* DE 68 (motion to compel). Having now reviewed the records at issue *in camera*, and for the reasons set forth below, I conclude that they are discoverable under the crime-fraud exception to the asserted privileges. I therefore grant the motion.

I.    Background

I assume the reader's familiarity with the facts and procedural history of this action and include here only such additional background information as is relevant to the determination of the plaintiff's motion to compel. In Alamy's discovery responses dated July 17, 2019, it identified a licensing agreement that went into effect in September 2018 (the "September 2018 Agreement") as being the one that governs the invoices at issue in this case. That identification was incorrect; instead, the pertinent licensing agreement, which Alamy did not produce at first, was executed in May 2018 (the "May 2018 Agreement"). *See* DE 68 at 2-3; DE 70 (opposition to motion to compel) at 2. As Alamy later acknowledged, it created the September 2018 Agreement after it realized that the May 2018 Agreement "did not accurately reflect the commercial realities of the transactions" on Alamy's website. DE 70 at 2.

Grecco contends that the circumstances surrounding Alamy's initial disclosure of the wrong version of the licensing agreement "indicate an effort to manipulate the record evidence to align with its principal defense to [Grecco's] copyright infringement claims." DE 68 at 2. Grecco correctly notes that Alamy not only produced the wrong licensing agreement at first, but that it then resisted producing a privilege log until Grecco forced its hand by filing a motion to compel. *See id.* at 2-3. When Alamy ultimately did produce the log it revealed that it had withheld multiple communications among Alamy's counsel and Alamy Ltd. representatives "concerning the preparation of the [September 2018] License Agreement." *Id.* at 3. On the basis of that disclosure, I directed Alamy to provide the withheld documents to me for review *in camera*.

After reviewing the relevant records and Alamy's arguments on the merits of the privilege assertion, *see* DE 75, I met *ex parte* with Alamy's counsel on February 26, 2020. I discussed certain records with counsel and then offered Alamy an opportunity to reflect on the matter and submit a supplemental statement as to whether it would continue to withhold the records based on its assertion of privilege. *See* DE 78. The invitation was simply to report whether Alamy would continue to press the matter; what I did not do was invite Alamy to submit further argument on the merits of the dispute to which Grecco – whose counsel was not privy to the discussion – would have no meaningful opportunity to respond. Alamy, however, did exactly that: it submitted further argument on the merits *ex parte* and requested an opportunity to submit still more *ex parte* arguments if I found the latest batch unpersuasive. *See* DE 80. I denied that request and noted that I would rule on the plaintiff's motion to compel based on the record developed to date. *See* Order dated Apr. 3, 2020.

II.     Discussion

"The crime-fraud exception strips the privilege from attorney-client communications that relate to client communications in furtherance of contemplated or ongoing criminal or fraudulent

2

conduct." *In re John Doe, Inc.*, 13 F.3d 633, 636 (2d Cir. 1994) (quoting *In re Grand Jury Subpoena Duces Tecum Dated September 15, 1983*, 731 F.2d 1032, 1038 (2d Cir. 1984)). Thus, documents that "would otherwise be protected from disclosure by the attorney-client privilege are not protected if they relate to communications in furtherance of a crime or fraud." *Zimmerman v. Poly Prep Country Day Sch.*, 2012 WL 2049493, at *6 (E.D.N.Y. June 6, 2012) (quoting *Duttle v. Bandler & Kass*, 127 F.R.D. 46, 53. (S.D.N.Y. 1989)).

"The Second Circuit requires that 'a party seeking to invoke the crime-fraud exception must at least demonstrate that there is probable cause to believe that a crime or fraud has been attempted or committed and that the communications were in furtherance thereof.'" *Abbott Labs. v. H&H Wholesale Servs., Inc.*, 2018 WL 2459271, at *4 (E.D.N.Y. Mar. 9, 2018) (quoting *In re Richard Roe, Inc.*, 68 F.3d 38, 40 (2d Cir. 1995)). "The crime-fraud exception 'applies to both the attorney-client privilege and the work product doctrine.'" *Abbott Labs.*, 2018 WL 2459271, at *4 (quoting *In re Gen. Motors LLC*, 2015 WL 7574460, at *4 (S.D.N.Y. Nov. 25, 2015)).

"Case law on the crime-fraud exception does not make perfectly clear what wrongdoing must be alleged, and with what specificity, in order for the [crime-fraud exception] to apply." *Chevron Corp. v. Salazar*, 275 F.R.D. 437, 452 (S.D.N.Y. 2011). "At a minimum, the attorney-client privilege does not protect communications in furtherance of an intentional tort that undermines the adversary system itself. District courts in this circuit have long construed the exception as reaching some conduct beyond crime and fraud." *Zimmerman*, 2012 WL 2049493, at *17 (quoting *Madanes v. Madanes*, 199 F.R.D. 135, 148-49 (S.D.N.Y. 2001)). "[C]ourts have applied the crime-fraud exception where a party's actions in discovery are found to be 'calculated and purposeful litigation misconduct.'" *Abbott Labs.*, 2018 WL 2459271, at *5 (quoting *In re Gen. Motors LLC*, 2015 WL 7574460, at *9).

3

Without the benefit of having seen the records in dispute, Grecco sought to invoke the crime-fraud exception on the ground that Alamy fraudulently described the September 2018 Agreement as the license pertinent to the claims in this case despite knowing that it was actually the May 2018 Agreement that applied. *See* DE 74 (transcript of January 13, 2020 Conference ("Tr.") at 16. In particular, Grecco's counsel urged me, in reviewing the records *in camera*, to look for a statement, the substance of which was:

> ["]This is how we need to change the document in order for us to argue to the Court Alamy, Inc. can't be sued. [Grecco has] got to go to England and sue Alamy, Ltd.["] [Alamy and its counsel] were setting up the very defense that they then went to Judge Chen, argued and said look at the website, it supports us.

*Id.* at 17. That is, Grecco anticipated that the documents Alamy withheld would reveal an effort to change the licensing agreement on Alamy's website so that they could refer the court to that inapposite agreement in seeking to dismiss this lawsuit. Grecco essentially posits that Alamy, having engaged in such misdirection, then bolstered it and fended off its discovery by producing the wrong licensing agreement – that is, the one written in response to Grecco's claims and then posted on the Alamy website – in response to Alamy's request for the disclosure of relevant records.

After reviewing the records at issue, I conclude that Grecco's concerns are well-founded, and that there is at least probable cause to believe that the crime-fraud exception applies. To explain how I reach that conclusion, I must of course refer to some extent to the contents of the communications at issue. However, to avoid undue prejudice to Alamy in the event it seeks review of this decision, I must also be circumspect in describing those contents. I will therefore redact the following description (in which I cite documents using the Bates numbers Alamy assigned them) in the version of this order filed on the public docket, file the unredacted version under seal, and unseal the latter if my decision remains in effect upon the completion of any review.

4

- For purposes of context, an email from Alamy's counsel to Alamy Ltd.'s then-Chief Operating Officer John Schilizzi ("Schilizzi") dated November 28, 2016, makes clear that [redacted]. *See* ALA001935.

- After Grecco filed the instant action, Alamy's counsel sent Schilizzi an email dated July 9, 2018, [redacted]. ALA002751.

- In a series of emails among Schilizzi, Alamy's counsel in this action, and Alamy, Ltd. in-house counsel Maurice Murphy ("Murphy"), Alamy [redacted]. *See* ALA001728.000014, ALA002742.

- In response to that revelation, Murphy wrote in an email to outside counsel that [redacted]. ALA001726.000001.

- On August 28, 2018, Schilizzi sent an email to Alamy's outside counsel [redacted]. *See* ALA001731.000002. It is difficult to view the request as innocuous: [redacted] thus may suggest that Alamy intended to mislead the court by [redacted].

- In this context, I find it notable that the record Alamy produced to me for *in camera* review did not include any response by Alamy's counsel to Schilizzi's inquiry. It seems unlikely that counsel would ignore such a question from their client, or that the client would be content to get no response if they did. If counsel did respond, they either did so in a writing that Alamy continues to withhold (which I assume is not the case) or they decided it would be prudent to respond in a way that did not produce a record of the communication. There may be any number of innocent reasons for counsel to have chosen the latter course, but I cannot ignore the plausible explanation that counsel recognized the impropriety of Schilizzi's request and could not respond in writing – even in an effort to dissuade Alamy from engaging in misconduct – without creating a discoverable record that would reveal Alamy's intent to defraud the court.

- On September 5, 2018, Schilizzi sent an email to a recipient who appears to be an information technology professional at Alamy. In asking his colleague to [redacted]. ALA002266. Schilizzi added that [redacted]. *Id.* Schilizzi does not explain in the email [redacted] would serve Alamy's legitimate interests when there was no similar need to [redacted]. Here again, I conclude that Schilizzi's words suggest an intent to mislead this court.

- On September 16, 2018, in an email to Schilizzi and Murphy regarding the pending motion to dismiss, Alamy's outside counsel wrote that [redacted]. ALA002392-93.

- Murphy responded to the latter email on September 17, 2018. He wrote in pertinent part that [redacted]. ALA002755.

5

"If a prudent person has a reasonable basis to suspect the perpetration or attempted perpetration of a crime or fraud, and that the communications were in furtherance thereof, then the burden has been satisfied and the documents are subject to disclosure." *Zimmerman*, 2012 WL 2049493, at *7 (quoting *In re Grand Jury Subpoena Duces Tecum Dated September 15, 1983*, 731 F.2d at 1039). Such a reasonable basis exists here.

Alamy and its counsel repeatedly expressed a belief that [redacted]. The only possible way for that belief to be accurate is if the defendants and their counsel intended to [redacted] further suggests that Alamy's goal was to mislead the court. Against that backdrop, Alamy's disclosure of the September 2018 Agreement in response to Grecco's discovery request for the operative agreement in place at the time of the events being litigated – the May 2018 Agreement – can be understood as a continuation of Alamy's earlier effort to defraud the court in connection with its determination of the motion to dismiss.

It is of course entirely possible that Alamy and its counsel had a sincere (but incorrect) belief that [redacted] while the dismissal motion remained pending could have some cognizable effect on the court's analysis of the motion's merits. And while I conclude that it strains credulity to posit that Alamy's attorneys, being so familiar with [redacted], could make such a mistake under the circumstances of this case, I cannot entirely discount the possibility that Alamy's disclosure to Grecco of the wrong version of the licensing agreement was an inadvertent oversight rather than a continued attempt to defraud the court and Grecco. Those possibilities, however, do not alter the analysis of the motion to compel. The mere possibility of an alternative explanation is insufficient where, as here, a prudent person can reasonably understand the communications between Alamy and its counsel as being in furtherance of a scheme to mislead the court and Grecco by misleadingly pointing to the September 2018 Agreement as the operative license. I therefore conclude that there

6

is probable cause to believe that some of the documents Alamy has withheld on the basis of its assertion of the attorney-client communications and attorney work product privileges fall within the scope of the crime-fraud exception to those privileges and must therefore be disclosed.

Accordingly, I direct Alamy to disclose to Grecco all documents listed in Alamy's privilege log that include any reference to Grecco or this litigation and that relate to: (a) the May 2018 Agreement, (b) the September 2018 Agreement, or (c) any other modification or revision of Alamy's websites. Alamy shall make the required disclosures by October 15, 2020. If Alamy timely objects to this order, the deadline for disclosure (if required) shall be adjourned until seven days after the date of the order resolving the objections.

III.    Recommendation

For the reasons set forth above, I grant the motion in part and direct the defendants to disclose certain documents previously withheld on the basis of an assertion of privilege.

SO ORDERED.

Dated: Brooklyn, New York
       October 1, 2020

                                                            /s/
                                                    James Orenstein
                                                    U.S. Magistrate Judge