UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
MICHAEL GRECCO PRODUCTIONS, INC.,

               Plaintiff,

         - against -

ALAMY INC. and ALAMY LTD,

               Defendants.
--------------------------------------------------------x

**MEMORANDUM & ORDER**
18-CV-3260 (PKC) (RER)

PAMELA K. CHEN, United States District Judge:

Plaintiff Michael Grecco Productions, Inc. ("Grecco") alleges that Defendants Alamy, Inc. and Alamy, Ltd. infringed on Plaintiff's copyrights by using Plaintiff's photographs on Defendants' website, alamy.com. Before the Court are objections to the October 1, 2020 Memorandum and Order of James Orenstein, U.S.M.J. (the "M&O"). In that M&O, Judge Orenstein ordered Defendants to produce certain communications between Defendants and their counsel related to modifications and revisions of the licensing agreements on Defendants' website. Defendants argued that the documents were protected by attorney-client privilege, but Judge Orenstein found that the crime-fraud exception applied because there was a reasonable basis to believe that the communications were made in furtherance of a crime or fraud—namely, misrepresenting the licensing agreement that was applicable to the facts underlying this case. For the reasons explained below, the Court affirms Judge Orenstein's October 1, 2020 M&O in its entirety.

## BACKGROUND

Plaintiff initiated this action on June 4, 2018, solely against Alamy, Inc. (Complaint, Dkt. 1.) On July 26, 2018, Alamy, Inc. sought leave to file a motion to dismiss, asserting that Plaintiff had sued the wrong Defendant. (Dkt. 14.) Alamy, Inc. argued that it was a "related, but

independently managed, foreign corporation," from Alamy, Ltd., an English corporation; that

Alamy, Inc. simply cultivated relationships with U.S. users of alamy.com; that Alamy, Ltd. was

the sole owner of alamy.com; and that the Court lacked jurisdiction over Alamy, Ltd. (*Id.*)

In opposition, Plaintiff noted that the license agreement available on alamy.com stated that

"'Alamy' Means Alamy Inc." and that the license agreement was a legal agreement "between you

. . . and Alamy Inc." (Dkt. 15, at 2.) That license agreement (the "May 2018 Agreement") was

undated, but was allegedly updated in May 2018, and was available on alamy.com at the time that

this lawsuit was filed. (*See* Defendants' Objections to Magistrate Judge James Orenstein's

October 1, 2020 Order ("Objections"), Dkt. 104, at 2–3.) The May 2018 Agreement did not

mention Alamy, Ltd. (*See* May 2018 Agreement, Dkt. 68-4.)

On or about September 18, 2018—shortly before Alamy, Inc. filed its motion to dismiss—

the license agreement available on alamy.com was replaced with another undated license

agreement (the "September 2018 Agreement") (Objections, Dkt. 104, at 6), which added multiple

mentions of Alamy, Ltd., including the following:

> Alamy Limited, a corporation based in the United Kingdom and the owner and
> operator of the alamy.com website (and related domains) and system, has entered
> into agreements with Contributors to host and offer their image(s)/Footage for
> licensing. Alamy Limited authorises Alamy [referring to Alamy, Inc.] to carry out
> certain limited sales activities on its behalf, including concluding a License with
> you.

(September 2018 Agreement, Dkt. 68-3, at ECF 2.[1])

On March 12, 2019, this Court denied Alamy, Inc.'s motion to dismiss, but in doing so,

specifically declined to consider information on Alamy, Inc.'s website. (Memorandum & Order,

Dkt. 32, at 1, 5 n.1.) On April 25, 2019, Judge Orenstein granted Alamy, Inc.'s request to bifurcate

---

[1] Citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing
system and not the document's internal pagination.

discovery, with the first phase focused on "whether the plaintiff has sued the defendant responsible for the conduct at issue," and to promptly make all Rule 26 disclosures.  (*See* Dkt. 40, at 1; *see also* Dkts. 38–40.)  Pursuant to its obligations under Rule 26(a)(1), Alamy, Inc. had previously indicated that it had possession of "[l]icensing agreements between Alamy Ltd. or Alamy Inc. and third parties concerning the photographs at issue."  (Defendant Alamy Inc.'s Initial Disclosures, Dkt. 110-1 § B(1)(ii).)  Then, pursuant to Judge Orenstein's order to make all Rule 26 disclosures, Alamy, Inc. produced the September 2018 License Agreement, but not the May 2018 License Agreement.  (*See* Dkt. 110-2; Objections, Dkt. 104, at 8–9.)

After additional discovery, Plaintiff amended its complaint, adding Alamy, Ltd. as a defendant.  (Amended Complaint, Dkt. 58.)  In response to Defendants' representation that some documents concerning the applicable license agreement were protected by attorney-client privilege, Plaintiff moved to compel a privilege log.  (Dkt. 63.)  After receiving the privilege log, Plaintiff moved to compel disclosure of communications concerning the preparation of the September 2018 Agreement that were listed as protected by the attorney-client privilege.  (Letter Motion to Compel ("Mot. to Compel"), Dkt. 68, at 1–3.)  Plaintiff argued that Alamy, Inc.'s disclosure of the wrong license agreement "indicate[d] an effort to manipulate the record evidence to align with its principal defense."  (*Id.* at 2.)

Judge Orenstein reviewed the documents *in camera* and then held an *ex parte* conference with Defendants.  (M&O, Dkt. 100, at 2.)  According to Defendants, Judge Orenstein indicated that he was leaning toward finding that the crime-fraud exception applied, but invited Defendants to submit additional documentation and explanation.  (Objections, Dkt. 104, at 13–14.)  Judge Orenstein, however, stated that the invitation was "simply to report whether [Defendants] would continue to press the matter; what I did not do was invite [Defendants] to submit further argument

3

on the merits of the dispute." (M&O, Dkt. 100, at 2.) As Judge Orenstein noted however, Defendants did exactly that. (*Id.*) Defendants submitted additional documents aimed at "rebut[ting] any adverse inference or initial showing that fraud was intended." (Dkt. 80, at ECF 1.) Those documents consisted of additional communications about the September 2018 License Agreement. To explain why they had not been listed in the privilege log or previously produced, defense counsel effectively stated that, after the conference with Judge Orenstein, they went back to their clients and had them conduct a more thorough search. (*Id.* at ECF 4 n.5.)

Judge Orenstein reiterated that he had not "solicit[ed] further argument on the merits to which [Plaintiff] would have no meaningful opportunity to respond" and declined to consider the additional materials. (04/03/2020 Docket Order.) Based on Judge Orenstein's *in camera* review of the documents at issue, he granted Plaintiff's motion to compel, finding that "there is at least probable cause to believe that the crime-fraud exception applies." (M&O, Dkt. 100, at 4.) Judge Orenstein provided a thorough summary of the contents of the documents and concluded that, around the time of the filing of the motion to dismiss,

> [Defendants] and [their] counsel repeatedly expressed a belief that retroactive changes to the May 2018 Agreement could affect the litigation. The only possible way for that belief to be accurate is if [Defendants] and their counsel intended to use the updated agreement retroactively for fraudulent purposes in this litigation. . . . Against that backdrop, [Defendants'] disclosure of the September 2018 Agreement in response to Grecco's discovery request for the operative agreement in place at the time of the events being litigated—the May 2018 Agreement—can be understood as a continuation of [Alamy, Inc.'s] earlier effort to defraud the court in connection with its determination of the motion to dismiss.

(*Id.* at 6–7.) Although noting that it "strains credulity," Judge Orenstein observed that it is "possible that [Defendants] and [their] counsel had a sincere (but incorrect) belief that revising the licensing agreement while the dismissal motion remained pending could have some cognizable effect on the court's analysis of the motion's merits." (*Id.* at 7.) Judge Orenstein observed, however, that

[t]hose possibilities . . . do not alter the analysis of the motion to compel. The mere possibility of an alternative explanation is insufficient where, as here, a prudent person can reasonably understand the communications between [Defendants] and [their counsel] as being in furtherance of a scheme to mislead the court and Grecco by misleadingly pointing to the September 2018 Agreement as the operative license.

(*Id.*)  Accordingly, Judge Orenstein ordered disclosure.  (*Id.* at 8.)  Defendants objected (Objections, Dkt. 104), and Plaintiff filed a response (Plaintiff's Opposition to Defendants' Objections to Magistrate Judge James Orenstein's October 1, 2020 Order, Dkt. 109).  This Court has now reviewed the relevant documents *in camera*.  As discussed below, the Court finds nothing in Judge Orenstein's October 1, 2020 M&O to be clearly erroneous or contrary to law, and thus affirms.

## DISCUSSION

Discovery motions, like the one at issue here, are generally considered non-dispositive. *Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 900 F.2d 522, 525 (2d Cir. 1990); *see also NYU Winthrop Hosp. v. Microbion Corp.*, 405 F. Supp. 3d 387, 390 (E.D.N.Y. 2019).  A district judge may modify or set aside a magistrate judge's determination of a non-dispositive, pre-trial matter only where the determination is "clearly erroneous or is contrary to law."  Fed. R. Civ. P. 72(a); *Pressley v. City of New York*, No. 11-CV-3234 (PKC) (RER), 2016 WL 1271480, at *1 (E.D.N.Y. Mar. 31, 2016).  A determination is "clearly erroneous" where "the district court on the entire evidence is left with the definite and firm conviction that a mistake has been committed," *Pressley*, 2016 WL 1271480, at *1 (quoting *Pall Corp. v. Entegris, Inc.*, 655 F. Supp. 2d 169, 172 (E.D.N.Y. 2008)), and "contrary to law" when "it fails to apply or misapplies relevant statutes, case law or rules of procedure," *id.* (quoting *E.E.O.C. v. First Wireless Grp., Inc.*, 225 F.R.D. 404, 405 (E.D.N.Y. 2004)).

Defendants argue that Magistrate Judge Orenstein "misapplied controlling law" in finding that the alleged wrongdoing here rose to the level of "fraud." (Objections, Dkt. 104, at 18.) In support of that argument, Defendants point to several district court decisions cited by Judge Orenstein and assert that the alleged wrongdoing in those cases was much more severe than what is alleged here. (*Id.* at 18–19.) As a preliminary matter, district court decisions, even from courts in the same district, are not "controlling law," even as to magistrate judges. *Mfg. Admin. & Mgmt. Sys., Inc. v. ICT Grp., Inc.*, 212 F.R.D. 110, 119 (E.D.N.Y. 2002). Regardless, even assuming that some cases in which the crime-fraud exception applied involved more serious wrongdoing than the wrongdoing alleged here, that would not render Judge Orenstein's decision clearly erroneous or contrary to law. Judge Orenstein identified the correct controlling standard for the crime-fraud exception—whether "there is probable cause to believe that a crime or fraud has been attempted or committed and that the communications were in furtherance thereof" (M&O, Dkt. 100, at 3 (quoting *In re Richard Roe, Inc.*, 68 F.3d 38, 40 (2d Cir. 1995)))—then applied that standard to the facts of this case and concluded that the crime-fraud exception applied (*id.* at 4–8). This Court does not find anything clearly erroneous about that conclusion.

In further support of the argument that Judge Orenstein "misapplied controlling law," Defendants point to statements made not in Judge Orenstein's M&O, but at a conference held prior to Judge Orenstein even reviewing the relevant documents *in camera*. (Objections, Dkt. 104, at 19–20.) At the conference, Judge Orenstein told the parties what he would be looking for when he reviewed the documents. Defendants quote Judge Orenstein as saying that he would look for "anything that suggests . . . an intention to . . . hide the change or not inform the plaintiff . . . in support of the misrepresentation . . . [or] an intentional misrepresentation." (*Id.* at 20 (ellipses and alteration in original).) Through their selective recounting of Judge Orenstein's statements,

Defendants materially misrepresent what he actually said and meant, which was, "I'm going to be looking for anything that suggests *not only* an intention to change the document but essentially to hide the change or not inform the plaintiff. . . . It would have to be something that says[,] when they said [']here's the right one[,'] that was a material misrepresentation." (Transcript of Civil Cause for Status Conference ("Tr."), Dkt. 74, 16:10–24 (emphasis added).)

> Defendants then argue in their objections that:

> The showing [Judge Orenstein] required to demonstrate fraud went from "anything that suggests . . . an intention to . . . hide the change or not inform the plaintiff . . . in support of the misrepresentation . . . [or] an intentional misrepresentation" to Plaintiff's proposed inquiry: "This is how we need to change the document in order for us to argue to the Court Alamy, Inc. can't be sued . . . in anticipation of supporting the defense."

(Objections, Dkt. 104, at 20 (ellipses in original) (quoting Tr., Dkt. 74, 17:11–25)). Again, Defendants' selective recitation of the record completely distorts what was said and by whom, and what was meant. The statement that Defendants describe as "Plaintiffs proposed inquiry" is actually a composite of a statement by Plaintiff's counsel (before ellipses) and a statement by Judge Orenstein (after ellipses) made two paragraphs later in the transcript. These separate statements were made as part of a dialogue between Plaintiff's counsel and Judge Orenstein in response to Judge Orenstein asking what he should be looking for in reviewing the documents. (Tr., Dkt. 74, 17:9–10.) Furthermore, far from adopting Plaintiff's formulation, Judge Orenstein concluded the dialogue by telling Plaintiff's counsel that her answers were "really not responsive to the question." (*Id.* 18:6–7.) In sum, Defendants' representation of the record is grossly misleading, inaccurate, and incomplete.

Given the issue at hand, the Court finds it striking and extremely troubling that defense counsel materially misrepresents what occurred at the conference before Judge Orenstein. Moreover, the comments made at that conference were largely irrelevant to Judge Orenstein's

ultimate decision and are wholly irrelevant to this Court's determination of whether to adopt Judge

Orenstein's decision. As discussed, in his M&O, Judge Orenstein applied the correct, controlling

legal standard, and did not do so in a clearly erroneous manner.

Defendants next argue that Judge Orenstein "erroneously applied an incorrect legal

standard" because, instead of applying the Second Circuit's controlling "probable cause" standard,

he "should have used a higher standard consistent with other courts in the Second Circuit."

(Objections, Dkt. 104, at 20.) In support of that argument, Defendants cite numerous district court

decisions that they characterize as applying "a higher standard" in determining whether the crime-

fraud exception applied. (*Id.* at 20 n.17.) This argument fails as a matter of law. "[A] magistrate

judge's decision is contrary to law only where it runs counter to controlling authority," *Pall Corp.*,

655 F. Supp. 2d at 172, and, as discussed, district court decisions are not "controlling law," *Mfg.*

*Admin. & Mgmt. Sys., Inc.*, 212 F.R.D. at 119. Furthermore, this Court agrees with Judge

Orenstein's application of a probable cause standard. *See In re Richard Roe, Inc.*, 68 F.3d at 40

(reiterating and applying probable-cause standard to invocation of crime-fraud exception to

attorney-client privilege).

Mixed in with that argument, Defendants repeatedly assert that Judge Orenstein viewed the

evidence "in a light most unfavorable" to Plaintiff, despite the requirement that the facts be viewed

in the light most favorable to the non-moving party, *i.e.*, Defendants, and that Judge Orenstein

"ignor[ed] the 'number of innocent reasons'" for Defendants' conduct. (Objections, Dkt. 104, at

21–22.) That argument again misconstrues the record. Judge Orenstein affirmatively considered

the potential "innocent reasons" for Defendants' conduct, but concluded that those possibilities

did not alter the conclusion that there was at least probable cause to believe that the crime-fraud

exception had applied. (*See* M&O, Dkt. 100, at 7–8.) This Court agrees.

Finally, Defendants argue that Judge Orenstein "erred in ignoring key factual arguments made by Defendants," specifically that: (1) updates to the U.S. agreements were not prioritized over updates to other agreements, and (2) a response existed to one specific email that gave Judge Orenstein pause. (Objections, Dkt. 104, at 23–34.) Both of those arguments are based on communications that were not listed in the original privilege log, not disclosed to Judge Orenstein before his *in camera* review, and thus not discussed by Judge Orenstein in his M&O. (*See id.* at 14–15 (discussing the communications produced *after* Judge Orenstein's *in camera* review).)

Defendants are effectively asking the Court to conclude that it was clearly erroneous or contrary to law for Judge Orenstein not to consider documents left off of the original privilege log by Defendants and not submitted to him until after his *in camera* review. The Court declines to do so. Defendants cite no case to support their position that it was clearly erroneous or contrary to law for Judge Orenstein to decline to consider those late submissions, especially given Defendants' access to them when the log was first produced and the absence of a good reason for their omission. Notably, "[a] magistrate judge has broad discretion to manage discovery disputes." *Collymore v. City of New York*, No. 16-CV-8270 (LTS) (OTW), 2021 WL 2269538, at *1 (S.D.N.Y. June 3, 2021). In this case, Defendants produced a privilege log, Judge Orenstein reviewed the documents listed in that log *in camera*, then informed Defendants that his review of the documents indicated that the crime-fraud exception likely applied. *Only after that* did Defendants conduct a further search and identify more documents responsive to Plaintiff's discovery request. Defendants had full notice and opportunity to timely produce those documents, but simply failed to do so without justification. This Court finds that Magistrate Judge Orenstein's decision not to consider those additional documents was well within a magistrate judge's "broad discretion to manage discovery disputes." *Id.*

To the extent that Defendants are asking this Court to consider additional factual evidence not considered by the Magistrate Judge, this Court declines to do so. *See Thai Lao Lignite (Thailand) Co. v. Gov't of Lao People's Democratic Republic*, 924 F. Supp. 2d 508, 512 (S.D.N.Y. 2013) ("Rule 72(a) precludes the district court from considering factual evidence that was not presented to the magistrate judge."); *see also In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 336 F.R.D. 400, 404 (S.D.N.Y. 2020) ("[N]ew arguments and factual assertions cannot properly be raised for the first time in objections to a magistrate's discovery order." (internal brackets omitted)); *Creighton v. City of New York*, No. 12-CV-7454 (PGG), 2015 WL 8492754, at *5 (S.D.N.Y. Dec. 9, 2015) ("Although a district court has the inherent authority to consider further evidence in reviewing rulings on nondispositive matters, such discretion should rarely be exercised in this context, because the district court functionally operates as an appellate tribunal under Rule 72(a)." (internal quotation marks omitted)). The Court finds that Defendants failure to timely produce the additional documents to Magistrate Judge Orenstein also justifies this Court declining to consider them now.

Furthermore, even if this Court were to consider the additional "factual arguments" that Magistrate Judge Orenstein allegedly "ignor[ed]," those arguments address only two of the numerous reasons that Judge Orenstein found that the crime-fraud exception applied, and would be insufficient, even if they had any merit, to undermine the correctness of Judge Orenstein's finding that the crime-fraud exception warrants disclosure of the allegedly privileged materials.

**CONCLUSION**

For the reasons explained above, the Court affirms Magistrate Judge Orenstein's October 1, 2020 Memorandum and Order in its entirety. In accordance with that Order, within seven (7) days of the issuance of this Order, Defendants shall produce all of the documents outlined by Magistrate Judge Orenstein. (*See* Memorandum and Order, Dkt. 100, at 8.)

SO ORDERED.


/s/ Pamela K. Chen
Pamela K. Chen
United States District Judge

Dated: January 21, 2022
Brooklyn, New York