UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| MICHAEL GRECCO PRODUCTIONS, INC., <br><br> *Plaintiff*, <br><br> -against- <br><br> ALAMY INC. AND ALAMY LTD., <br><br> *Defendants*. | 1:18-cv-03260 (PKC)(RER) |

## DEFENDANTS ALAMY INC.'S AND ALAMY LTD.'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

Nancy E. Wolff
Scott J. Sholder
CeCe M. Cole
COWAN, DEBAETS, ABRAHAMS
& SHEPPARD LLP
41 Madison Avenue, 38th Floor
New York, New York 10010
Tel.: (212) 974-7474
Fax: (212) 974-8474
nwolff@cdas.com
ssholder@cdas.com
ccole@cdas.com

*Attorneys for Defendants*
*Alamy Inc. and Alamy Ltd.*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..................................................................................1

FACTUAL BACKGROUND AND PROCEDURAL HISTORY ...................................................2

ARGUMENT .................................................................................................5

   I.    THE COURT SHOULD GRANT SUMMARY JUDGMENT TO DEFENDANTS ON PLAINTIFF'S DIRECT COPYRIGHT INFRINGEMENT CLAIM ......................................... 6

      A.    The DMCA Shields Defendants From Liability For Copyright Infringement ............ 7

      B.    Defendants Cannot Be Held Directly Liable For Copyright Infringement Because They Did Not Engage In Any Volitional Conduct ............................................... 18

   II.    THE COURT SHOULD GRANT SUMMARY JUDGMENT TO DEFENDANTS ON PLAINTIFF'S COPYRIGHT MANAGEMENT INFORMATION CLAIM ......................... 19

      A.    The Alamy Watermark Is Not CMI.................................................... 20

      B.    Even If The Watermark Constitutes CMI, It Is Not False CMI ................................ 21

      C.    Plaintiff Has Not Established § 1202(a)'s Double Scienter Requirement.................. 21

   III.   THE COURT SHOULD GRANT SUMMARY JUDGMENT TO DEFENDANTS ON PLAINTIFF'S INDIRECT INFRINGEMENT CLAIM AGAINST UK ALAMY ................. 23

      A.    There Is No Evidence Of Contributory Infringement ................................. 23

      B.    There Is No Evidence Of Vicarious Infringement...................................... 24

   IV.  DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT CONCERNING UNLICENSED IMAGES AND IMAGES ONLY LICENSED ABROAD............................ 25

CONCLUSION.....................................................................................25

## TABLE OF AUTHORITIES

**Cases**                                                                                 **Page(s)**

*Aaberg v. Francesca's Collections, Inc.*,
2018 WL 1583037 (S.D.N.Y. Mar. 27, 2018)……………………………………………..19

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) ........................................................................................ 6

*Arista Recs. LLC v. Lime Grp. LLC*,
   784 F. Supp. 2d 398 (S.D.N.Y. May 2, 2011) ......................................................24, 25

*Authors Guild, Inc. v. HathiTrust*,
   755 F.3d 87 (2d Cir. 2014) ............................................................................19, 20

*Bell v. Wilmott Storage Servs., LLC*,
   12 F.4th 1065 (9th Cir. 2021) ........................................................................... 18

*Brought to Life Music, Inc. v. MCA Recs., Inc.*,
   2003 WL 296561 (S.D.N.Y. Feb. 11, 2003) ........................................................... 23

*Capitol Recs., Inc. v. MP3tunes, LLC*,
   611 F. Supp. 2d 342 (S.D.N.Y. Mar. 4, 2009) ....................................................... 10

*Capitol Recs., Inc. v. MP3tunes, LLC*,
   821 F. Supp. 2d 627 (S.D.N.Y. Oct. 25, 2011) ....................................................9, 13

*Capitol Recs., LLC v. Vimeo, LLC*,
   826 F.3d 78 (2d Cir. 2016) ..................................................................7, 12, 13, 14

*Cartoon Network LP, LLLP v. CSC Holdings, Inc.*,
   536 F.3d 121 (2d Cir. 2008) ...........................................................................18, 19

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) ........................................................................................ 5

*Disney Enters., Inc. v. Hotfile Corp.*,
   798 F. Supp. 2d 1303 (S.D. Fla. Jul. 8, 2011).......................................................... 19

*Faulkner v. Nat'l Geographic Soc'y*,
   211 F. Supp. 2d 450 (S.D.N.Y. Jul. 13, 2002) ......................................................... 24

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
   499 U.S. 340 (1991) ........................................................................................ 6

*Fredricks v. Debra*,
   2022 WL 125815 (E.D.N.Y. Jan 13, 2022).............................................................. 23

*Gallo v. Prudential Residential Servs., Ltd. P'ship*,
   22 F.3d 1219 (2d Cir. 1994) ...........................................................................5, 6

*Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc.,*
   443 F.2d 1159 (2d Cir. 1971) ........................................................................ 24

*Grecco v. Age Fotostock Am., Inc.,*
   2021 WL 4555599 (S.D.N.Y. Oct. 5, 2021) ................................................. 25

*Greg Young Publ'g, Inc. v. Zazzle, Inc,*
   2017 WL 2729584 (C.D. Cal. May 1, 2017) ................................................... 8

*Island Software & Comput. Serv., Inc. v. Microsoft Corp.,*
   413 F.3d 257, 263 (2d Cir. 2005). ................................................................ 19

*Krechmer v. Tantaros,*
   747 F. App'x 6 (2d Cir. 2018) ...................................................................... 19

*Michael Grecco Photography, Inc. v. Everett Collection, Inc.,*
   589 F. Supp. 2d 375 (S.D.N.Y. Dec. 9, 2008) ............................................ 21

*Noland v. Janssen,*
   2019 WL 1099805 (S.D.N.Y. Mar. 8, 2019) ............................................... 25

*Obodai v. Demand Media, Inc.,*
   2012 WL 2189740 (S.D.N.Y. June 13, 2012) ......................................... 8, 10

*Perfect 10, Inc. v. Giganews, Inc.,*
   847 F.3d 657 (9th Cir. 2017) ....................................................................... 18

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n,*
   494 F.3d 788 (9th Cir. 2007) ....................................................................... 23

*Serv., Inc. v. Microsoft Corp.,*
   413 F.3d 257 (2d Cir. 2005) ........................................................................ 19

*Sid Avery & Assocs., Inc. v. Pixels.com, LLC,*
   479 F. Supp. 3d 859 (C.D. Cal. Aug. 18, 2020) ......................................... 22

*Smith v. BarnesandNoble.com, LLC,*
   143 F. Supp. 3d 115 (S.D.N.Y. Nov. 2, 2015) ............................................ 23

*Steinmetz v. Shutterstock, Inc.,*
   2022 WL 4342174 (S.D.N.Y. Sept. 19, 2022) ...................................... passim

*Teva Pharm. USA, Inc. v. Sandoz Inc.,*
   2013 WL 3732867 (S.D.N.Y. July 16, 2013) .............................................. 17

*UMG Recordings, Inc. v. Shelter Cap. Partners LLC,*
   718 F.3d 1006 (9th Cir. 2013) ................................................................ 10, 14

*Update Art, Inc. v. Modiin Publ'g, Ltd.,*
   843 F.2d 67 (2d Cir. 1988) .......................................................................... 25

*Ventura Content, Ltd. v. Motherless, Inc.*,
   2013 WL 11237204 (C.D. Cal. July 3, 2013),
   *aff'd*, 885 F.3d 597 (9th Cir. 2018) ..........................................................................12, 13

*Viacom Int'l Inc. v. YouTube, Inc.*,
   718 F. Supp. 2d 514 (S.D.N.Y. June 23, 2010) .......................................................14, 16

*Viacom Int'l, Inc. v. YouTube, Inc.*,
   676 F.3d 19 (2d Cir. 2012) ........................................................................................ passim

*Wolk v. Kodak Imaging Network, Inc.*,
   840 F. Supp. 2d 724 (S.D.N.Y. Jan. 3, 2012),
   *aff'd sub nom. Wolk v. Photobucket.com, Inc.*,
   569 F. App'x 51 (2d Cir. 2014) ................................................................................. passim

*Zuma Press, Inc. v. Getty Images (US), Inc.*,
   349 F. Supp. 3d 369 (S.D.N.Y. Oct. 4, 2018) ................................................................ 22

**Statutes**

17 U.S.C. § 106(3) ......................................................................................................... 25

17 U.S.C. § 512(c) ........................................................................................7, 10, 12, 15

17 U.S.C. § 512(c)(1) ..................................................................................................... 10

17 U.S.C. § 512(c)(1)(A) ..........................................................................................11, 12

17 U.S.C. § 512(c)(1)(A)(iii) .......................................................................................... 14

17 U.S.C. § 512(c)(1)(B) ........................................................................................11, 15, 16

17 U.S.C. § 512(c)(1)(C) ........................................................................................11, 12, 14

17 U.S.C. § 512(i) .........................................................................................................7, 10

17 U.S.C. § 512(i)(2) ........................................................................................................ 9

17 U.S.C. § 512(k)(1)(A) ................................................................................................. 8

17 U.S.C. § 512(k)(1)(B) ................................................................................................. 8

17 U.S.C. § 512(m) ......................................................................................................... 14

17 U.S.C. § 512(m)(1) ..................................................................................................... 13

17 U.S.C. 1202 .......................................................................................................19, 20, 21

17 U.S.C. § 1202(a) ................................................................................................19, 20, 21, 22

17 U.S.C. § 1202(c) ......................................................................................................... 20

17 U.S.C. § 1201(c)(1) .................................................................................................... 19

**Rules**

Fed. R. Civ. P. 56 ......................................................................................................................... 1

Fed. R. Civ. P. 56(a) .................................................................................................................... 5

**Regulations**

Standard Technical Measures & Section 512: Notice of Inquiry, U.S.Copyright Office,
    60 Fed. Reg. 25050 (Apr. 27, 2022)........................................................................9, 10

Notice of Inquiry, U.S. Copyright Office,
    60 Fed. Reg.  (Apr. 27, 2022)........................................................................................ 9

Other Authorities

S. Rep. No. 105-190 (1998).......................................................................................... 7, 17, 23

144 Cong. Rec. H7074-03 (1998)............................................................................................ 17

*Highsmith v. Getty Images (US), Inc.,* No.1:16-cv-5924 (JSR),
    ECF 67 (S.D.N.Y. Oct. 3, 2016)................................................................................... 21

*Highsmith v. Getty Images (US), Inc.,* No. 1:16-cv-5924 (JSR),
    ECF 68 (S.D.N.Y. Oct. 28, 2016)................................................................................. 21

Melville B. Nimmer & David Nimmer,
    Nimmer on Copyright, § 12B.04[A][1][d] (2015) ...................................................... 14

Defendants Alamy Inc. ("US Alamy") and Alamy Ltd. ("UK Alamy"; collectively, "Defendants") respectfully submit this brief in support of their motion for summary judgment under Fed. R. Civ. P. 56 dismissing all of Michael Grecco Productions, Inc.'s ("Plaintiff") claims.

## PRELIMINARY STATEMENT

Even as this case enters its fifth year, Plaintiff has done nothing to advance the ball on the merits of its claims. Discovery has revealed that its claims against a reputable visual image licensing platform that has been serving photographers for over 20 years are baseless, as the record is bereft of evidence that would support its allegations of direct and indirect copyright infringement or violation of the Digital Millennium Copyright Act ("DMCA") § 1202. As discussed at length below, even after a half a decade of litigation, there are no genuine issues of material fact that would justify a trial on any issues in this case, and Defendants are not liable as a matter of law.

*First*, there is no dispute that Plaintiff failed to issue a DMCA takedown notice for any of the images at issue—images which, even in a best-case scenario, would have earned Defendants revenues in the low three figures, even if Plaintiff owned all of them (which is uncertain). Issuing a proper takedown is a threshold requirement prior to filing any infringement action against DMCA-protected service providers such as Defendants. And Defendants are protected by the DMCA § 512(c) safe harbor because they are internet service providers with a repeat infringer policy; the images at issue were stored at the direction of third-party users; and Defendants did not have the requisite knowledge or control of, or direct financial benefit from the alleged infringements. Defendants also expeditiously removed all the allegedly infringing images. For this reason alone, Plaintiff's entire case should be dismissed.

*Second*, Plaintiff's direct infringement claims fail at a basic level because it has not alleged—let alone proved—that Defendants engaged in any volitional conduct that would subject

them to copyright infringement liability. Defendants operate a passive online platform for third-party photographers to submit content for licensing. Defendants do not vet, curate, or pass any judgment on contributor submissions other than basic quality control. The nature of Defendants' business and their lack of volitional conduct—required for a finding of copyright infringement—also ties directly back to their eligibility for DMCA safe harbor protection. This is simply not a claim that can survive against services like Defendants under these facts.

*Third*, Plaintiff fails to carry its burden on its § 1202(a) claim for provision or distribution of false copyright management information. The Alamy watermark upon which Plaintiff hangs its hat is not copyright management information, and even if it was, it is not false; it is decidedly *true*, acting as a source indicator for where the images reside, not who authored them. Further, Plaintiff falls far short of establishing § 1202(a)'s rigorous double-scienter requirement.

*Finally*, because Plaintiff's direct infringement claims fail on the undisputed facts, any claim of secondary liability against UK Alamy must also fail. Even so, Plaintiff does not even plead which theory of secondary liability he is pursuing, but regardless of the type of liability Plaintiff contemplated when he sued, the record belies any claim under either theory.

For these reasons, and as fully explained below, the Court should grant Defendants' summary judgment motion in its entirety, dismiss this case with prejudice, and end this multi-year waste of judicial and litigant resources.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Operating since September 1999, UK Alamy is an artist friendly digital platform based in the U.K. that offers photographers, visual artists, videographers, content libraries, and other owners of archival image collections a unique online platform, via their website www.alamy.com (the "Platform"), to upload images and videos and make them available for licensing and sales,

without any curating by UK Alamy, other than for limited quality control. (*See* Defendants' Local Rule 56.1 Statement of Undisputed Material Facts ("SUF") ¶¶ 1-4, 18.) The Platform currently offers nearly 350 million images and videos and adds more than 100,000 images per day from photographers and agencies sourced from 173 countries. (*Id*. ¶ 19.) UK Alamy shares the licensing revenue with its contributors, notably offering them a higher percentage than most of its competitors. (*Id*. ¶ 49.) Before uploading images to the Platform, contributors must agree to its contributor contract that requires contributors to, *inter alia*, attest that they own the rights to the visual content they upload. (*Id*. ¶¶ 52-53.) When uploading content, contributors also provide information and metadata in connection with the content that is used to automatically populate fields, such as the details shown alongside the content and the keywords that may be used to search for and find the content. (*Id*. ¶ 34.) When users search for content via keywords on the Platform, they are shown low-resolution versions of the resulting content with watermarks—an industry standard that is used to allow customers to identify the source of the image or video file under consideration and prevent unauthorized copying, as Defendants' expert confirmed. (*Id*. ¶¶ 20, 72.) Users must purchase a license for their specific use to access and obtain the original, high-resolution image (or video) residing in the database without the watermark. (*Id*. ¶ 74.)

US Alamy, a subsidiary of UK Alamy, is a separate entity, based in New York, that operates solely as a sales office for U.S. sales through the Platform, primarily to service U.S. customers with local U.S. employees. (*Id*. ¶¶ 5-6, 10.) It is currently a virtual office with limited staff. (*Id*. ¶ 11.) This structure ensures that US Alamy is fully compliant with all federal, state, and local taxes in the U.S. (*Id*. ¶ 10.)

Plaintiff is the California-based corporation of photographer Michael Grecco, who uses the company to license its photographs (and to bring copyright infringement claims). (*Id*. ¶¶ 12.)

During the 1990s, Grecco was commissioned to create what are known as publicity stills or "handouts"[1], of television actors on-set. (*Id*. ¶¶ 13.) For instance, the images at issue in this case are 25 publicity stills of actors from television shows from the 1990s (the "Images") to which Plaintiff allegedly owns the copyright.[2] (*Id*. ¶¶ 75; Plaintiff's Amended Complaint ("Amended Complaint" or "Am. Compl.") (ECF 57-58), ¶ 40 and Ex. B.) These duplicate slide photos from that era were commissioned by studios expressly for mass distribution and free publication by the media to promote the shows and actors without restriction. (SUF ¶ 15.) It has been common practice for archives to collect stills from that era, making it easier for publishers to access digital copies for publication. (*Id*. ¶ 16.)

As alleged in the Amended Complaint, in 2012 Plaintiff entered into an agreement with RGB Ventures LLC d/b/a Superstock ("SuperStock"), a stock photo collection, by which Plaintiff agreed to license—non-exclusively—many of its images (now in digital format) through SuperStock (the "SuperStock Agreement"). (*Id*. ¶ 31.) The SuperStock Agreement permitted sub-licenses, and SuperStock uploaded certain of Plaintiff's images to the Platform to make them more widely available for licensing. (Am. Compl. ¶¶ 31–32.) Plaintiff terminated the SuperStock Agreement in 2013, but the agreement contained an 18-month survival term (the "Survival Term"), during which time SuperStock and its sublicensees were authorized to continue licensing Plaintiff's images through mid-2015. (*Id*. ¶¶ 33–34.) UK Alamy removed SuperStock's digital files of Plaintiff's images from the Platform pursuant to its request, located by SuperStock's image ID numbers. (SUF ¶ 85.)

---

[1] Handout photos are provided to news organizations and media companies for free by studios when general access by the media is either denied or impossible. (SUF ¶ 14.) These images are used for promotional and marketing purposes with the goal of being widely distributed. (*Id*.)

[2] Discovery has revealed that Plaintiff may not own the copyright to some of the Images. (*Id*. ¶ 77.) On some of the Image's original slide mounts, which were provided to Defendants by the contributors after the commencement of this litigation, there is a copyright credit to the television networks and studios who commissioned the handout. (*Id*. ¶ 78.) Regardless, as explained *infra*, Plaintiff's claims for copyright infringement fail as a matter of law.

However, UK Alamy later discovered that other third-party contributors, such as entertainment archives, had also uploaded duplicate versions of Plaintiff's Images (as digital images identified by different image numbers) to the Platform. (*Id*. ¶ 86.) As the organization and maintenance of images on the Platform depends on contributor-supplied data (which identifies contributor digital image files numerically, and not visually), UK Alamy did not discover the duplicate Images supplied by other archival contributors, allegedly owned by Plaintiff, on the Platform until Plaintiff commenced this action on June 4, 2018 by filing a complaint against US Alamy (the "Initial Complaint") without first sending any cease-and-desist letter or DMCA takedown notice. (ECF 1; SUF ¶ 81.) In accordance with its DMCA policy, UK Alamy promptly removed the Images from the Platform. (*Id*. ¶ 87.) Notably, of the 25 Images at issue, only 7 were licensed through the Platform (the "Licensed Images"), earning Defendants a total of $275.98 in licensing fees, amounting to $137.99 after sharing a portion with the contributors. (*Id*. ¶ 135.) One of the Licensed Images, however, is an image of Bob Marley, as identified on Exhibit A to the Amended Complaint (the "Marley Image"), which was provided to UK Alamy by Superstock and licensed during the Survival Term, so this license is not at issue here. (*Id*. ¶ 124, 137.) The Marley Image was later uploaded by a contributor in a user-generated chat area on the Platform (the "Marley Forum Image"). (*Id*. ¶ 125.)

## **ARGUMENT**

Summary judgment on a particular claim or defense is warranted where the movant shows that "there is no genuine dispute as to any material fact" and it "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). While the moving party bears the initial burden of demonstrating "the absence of a genuine issue of material fact," *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986), the "moving party may obtain summary judgment by showing that little or no evidence may be

found in support of the nonmoving party's case." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1223–24 (2d Cir. 1994). "When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment [in favor of the movant] is proper." *Id.* at 1224. "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

For the reasons stated below, there are no genuine issues of material fact as to (1) Defendants' entitlement to the protection of the DMCA § 512(c) safe harbor; (2) the utter lack of merit to Plaintiff's DMCA § 1202 claim; (3) Defendants' lack of volitional conduct; and (4) the inapplicability of indirect liability doctrines to UK Alamy.

## I. THE COURT SHOULD GRANT SUMMARY JUDGMENT TO DEFENDANTS ON PLAINTIFF'S DIRECT COPYRIGHT INFRINGEMENT CLAIM

Plaintiff seeks to hold Defendants directly liable for purportedly infringing its alleged copyrights in the Images. (Am. Compl. ¶¶ 49-60.) To do so, Plaintiff must establish "ownership of a valid copyright" and "copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991).[3] Plaintiff's claim is not actionable as a matter of law for multiple reasons. *First*, as an online service provider, the DMCA provides Defendants with a complete defense to copyright infringement for content supplied by Contributors. *Second*, Defendants did not undertake any volitional act that caused the alleged copying, display, and/or distribution of Plaintiff's Images.

---

[3] Emphasis is added to, and citations and internal quotations are omitted from legal citations unless otherwise noted.

## A.  The DMCA Shields Defendants From Liability For Copyright Infringement

The DMCA contains various "safe harbor" provisions in § 512 that shield Internet Service Providers ("ISPs") from claims for secondary copyright liability when they engage in routine business activities that may result in transmission of "potentially infringing material over their networks." *See* S. Rep. No. 105-190, at 2 (1998). Applicable here is the safe harbor which states that ISPs will not be liable for claims based on "information residing on [ISP's] systems or networks at [the] direction of users." 17 U.S.C. § 512(c). This provision protects compliant ISPs from claims based on user-generated or user-supplied content where the ISP did not know about the infringement; promptly removed the material upon receipt of notice; and took other various preventative measures. *See Capitol Recs., LLC v. Vimeo, LLC*, 826 F.3d 78, 89-90 (2d Cir. 2016).

There can be no genuine dispute that the Images were uploaded to the Platform by third-party contributors (SUF ¶¶ 88, 94, 100, 108, 117), putting this case squarely within the province of DMCA § 512(c). As set forth below, Defendants meet every single requirement for protection under this safe harbor, and thus cannot be liable for copyright infringement as a matter of law.

### 1.  Defendants Satisfy The DMCA Safe Harbor Prerequisites

To qualify for any DMCA safe harbor, a party "(1) must be a 'service provider' as defined by the statute; (2) must have adopted and reasonably implemented a policy for the termination in appropriate circumstances of users who are repeat infringers; and (3) must not interfere with standard technical measures used by copyright owners to identify or protect copyrighted works." *Wolk v. Kodak Imaging Network, Inc.*, 840 F. Supp. 2d 724, 743 (S.D.N.Y. Jan. 3, 2012), *aff'd sub nom. Wolk v. Photobucket.com, Inc.*, 569 F. App'x 51 (2d Cir. 2014); *see* 17 U.S.C. § 512(i). Defendants satisfy all these requirements.

a)   Defendants Fit The Broad Definition Of A "Service Provider"

Defendants are ISPs, which the DMCA defines as "an entity offering the transmission, routing, or providing of connections for digital online communications, between or among points specified by a user, of material of the user's choosing, without modification to the content of the material as sent or received," or "a provider of online services or network access, or the operator of facilities therefor." 17 U.S.C. § 512(k)(1)(A)-(B). This definition is liberally construed and is "intended to encompass a broad set of Internet entities," *Wolk*, 840 F. Supp. 2d at 744, including sites that permit users to upload and share content. SUF ¶¶ 1, 25; *cf. Wolk*, 840 F. Supp. 2d at 744 (Photobucket, a website that allows users to upload and share images, is an ISP); *Viacom Int'l, Inc. v. YouTube, Inc.,* 676 F.3d 19, 39 (2d Cir. 2012) (YouTube is an ISP), *aff'd in relevant part*, 676 F.3d 19 (2d Cir. 2012); *Obodai v. Demand Media, Inc.*, 2012 WL 2189740, at *4 (S.D.N.Y. June 13, 2012) ("website that permits users to post and share materials" is an ISP); *see also Greg Young Publ'g, Inc. v. Zazzle, Inc,* 2017 WL 2729584, at *6 (C.D. Cal. May 1, 2017) ("[I]t is difficult to imagine any online service that the definition [of ISP] would not encompass").

Defendants unquestionably provide a service online, at very least under § 512(k)(1)(B)—namely, the opportunity to license user-uploaded images—and therefore qualify as ISPs. (SUF ¶¶ 17, 18.) Indeed, Judge Hellerstein found that Shutterstock, a similar service to Alamy, was an ISP, in that it "offers an online platform for image sharing" and a "forum, or the 'facilities,' that allows independent contributors to connect with and make their images available for licensing to users in need of content." *Steinmetz v. Shutterstock, Inc.*, 2022 WL 4342174, at *5 (S.D.N.Y. Sept. 19, 2022); SUF ¶¶ 17, 18. Defendants, like Shutterstock, were also "primarily passive—facilitating rather than performing the licensing" of the Images, which were uploaded by third parties. *Shutterstock*, 2022 WL 4342174, at *6; SUF ¶¶ 88, 90, 94, 96, 100, 102, 108, 113, 117, 119.

b) Defendants Maintain A Repeat Infringer Policy

Defendants also meet the second threshold requirement, which requires that the service provider (1) "adopt a policy that provides for the termination of service access for repeat copyright infringers;" (2) "inform users of the [] policy;" and (3) "implement the policy in a reasonable manner." *Wolk*, 840 F. Supp. 2d at 744 (requirement met where defendant had "a policy under which copyright holders can submit a take-down notice," "made [it] available to the public on [its] website," and in appropriate circumstances "acted to remove the infringing material" upon receipt of takedown notices); *see also Capitol Recs., Inc. v. MP3tunes, LLC*, 821 F. Supp. 2d 627, 637 (S.D.N.Y. Oct. 25, 2011) (service provider "reasonably implemented" policy where it had "a system for responding to takedown notices," did "not interfere with the copyright owners' ability to issue notices," and "terminate[d] users who repeatedly or blatantly infringe copyrights").

Defendants' policy for terminating infringers' accounts is set forth in the Platform's publicly availably Terms and Conditions of Service, to which all contributors must agree before uploading content. (SUF ¶¶ 26, 33, 59, 63.) Defendants also have a DMCA Policy that sets forth the procedure for submitting takedown notices and provides the designated agent's contact information. (*Id.* ¶¶ 39, 57, 60-62.) In appropriate circumstances, including for repeat infringement, UK Alamy has disabled access to the content and/or terminated contributor accounts. (*Id.* ¶¶ 58, 63.)

c) Defendants Do Not Interfere With Standard Technical Measures

Defendants do not interfere with any "standard technical measures . . . that are used by copyright owners to identify or protect copyrighted works" because, currently, none exists. 17 U.S.C. § 512(i)(2) (defining "standard technical measures" as those "developed pursuant to a broad consensus of copyright owners and service providers in an open, fair, voluntary, multi-industry

standards process"); *cf.* Standard Technical Measures & Section 512: Notice of Inquiry, U.S. Copyright Office, 60 Fed. Reg. 25050 (Apr. 27, 2022) (seeking public comment given "observ[ation] that, in the two decades since the passage of the DMCA, no [standard technical measures] have been identified"). Additionally, Plaintiff does not identify any "standard technical measure" that comports with the definition above. *See generally* Am. Compl.; *see also Obodai*, 2012 WL 2189740, at *5 (distributing copyrighted texts and entering into a distribution agreement is "not evidence of interference with standard technical measures under the DMCA."); *Viacom*, 676 F.3d at 41 ("plaintiffs make no argument that the content identification tools . . . constitute 'standard technical measures,' such that YouTube would be exposed to liability under § 512(i).")

2.  Defendants Are Eligible for Safe Harbor Protection Under Section 512(c)

For the reasons explained below, Defendants are immune from liability with respect to the Images. Considering their qualifications for the § 512(c) safe harbor with respect to the Images, Plaintiff's claim fails on a foundational level. Plaintiff does not dispute that, upon recognizing the Images on the Platform, Plaintiff failed to first issue a DMCA takedown notice, choosing instead to file this lawsuit. (SUF ¶ 131.) To hold an ISP liable for copyright infringement, the DMCA requires that copyright owners follow the notice provisions set forth in § 512(c)(1). *Capitol Recs., Inc. v. MP3tunes, LLC*, 611 F. Supp. 2d 342, 346 (S.D.N.Y. Mar. 4, 2009). Plaintiff's entire case should be dismissed for this reason alone. *Id.* ("The DMCA requires that copyright owners follow the notice provisions provided in 17 U.S.C. § 512(c)(1) . . . in order to hold [I]nternet service providers liable for copyright infringement.") Moreover, Plaintiff's "decision to forgo the DMCA notice protocol stripped [it] of the most powerful evidence of a service provider's knowledge – actual notice of infringement from the copyright holder." *UMG Recordings, Inc. v. Shelter Cap. Partners LLC*, 718 F.3d 1006, 1021-22 (9th Cir. 2013).

To the extent the Court evaluates Defendants' safe harbor protection despite Plaintiff's fundamental failure noted above, Defendants, in addition to the DMCA's threshold requirements, must also satisfies the criteria of Section 512(c)(1), namely:

> (A) (i) does not have actual knowledge that the material or an activity using the material on the system or network is infringing;
>> (ii) in the absence of such actual knowledge, is not aware of facts or circumstances from which infringing activity is apparent; or
>> (iii) upon obtaining such knowledge or awareness, acts expeditiously to remove, or disable access to, the material;
> (B) does not receive a financial benefit directly attributable to the infringing activity, in a case in which the service provider has the right and ability to control such activity; and
> (C) upon notification of claimed infringement as described in paragraph (3), responds expeditiously to remove, or disable access to, the material that is claimed to be infringing or to be the subject of infringing activity.

17 U.S.C. § 512(c)(1)(A)-(C). Defendants have proved their satisfaction of all these elements.

### a) The Images Were Stored "At The Direction Of A User"

There is no dispute that the Images at issue constitute material "stored at the direction of a user." *First*, the Marley Forum Image was uploaded by a third-party user to one of the forums hosted on the Platform. (SUF ¶ 125.) This specific forum, titled "Ask the forum" is intended to assist those who have questions concerning Defendants or the "stock industry" more generally and suggests that a "fellow Alamy contributor" may have the answer to a user's question. (*Id*. ¶¶ 30, 127.) The Marley Forum Image was posted to this forum by a Washington, D.C.-user named "Michael Ventura." (*Id*. ¶ 126.) Mr. Ventura's forum post was not reviewed, edited, promoted, or sponsored by Defendants or its staff or editors. (*Id*. ¶ 128.) Mr. Ventura is not one of Defendants' employees and Defendants do not have an office in Washington, D.C. (*Id*. ¶¶ 3, 7, 129.) *Second*, the record is clear that the remaining Images were uploaded to the Platform by third-party contributors as well. (*Id*. ¶¶ 88, 94, 100, 106, 117.) Defendants did not select, curate, or edit *any* of the Images as uploaded third-party contributors and were added to the Platform as a direct result

of the third-party contributors. (*Id*. ¶ 35.) Accordingly, the Images, including the Marley Forum

Image constitute user-supplied content that falls under DMCA § 512(c).

> b) <u>Defendants Had No Actual Or "Red Flag" Knowledge Of The Specific Alleged Infringement Prior To Plaintiff's Complaint And Expeditiously Removed The Contributor Images</u>

To be eligible for safe harbor protection under DMCA § 512(c), it must be the case that

Defendants (i) had no "actual knowledge" of the alleged infringement; (ii) no "aware[ness] of facts

or circumstances from which infringing activity [was] apparent;" or (iii) acted "expeditiously" to

remove or disable access to infringing content when notified. 17 U.S.C. § 512(c)(1)(A); *see also*

*id*. § 512(c)(1)(C). "[T]he burden falls on the copyright owner to demonstrate that the service

provider acquired knowledge of the infringement, or of facts and circumstances from which

infringing activity was obvious, and failed to promptly take down the infringing matter, thus

forfeiting its right to the safe harbor." *Vimeo*, 826 F.3d at 95. Plaintiff cannot meet this burden.

*First*, Defendants had no "actual knowledge" of the alleged infringement prior to Plaintiff's

filing of the Initial Complaint. SUF ¶¶ 81, 111, 132, 133; *Viacom*, 676 F.3d at 31 ("the actual

knowledge provision turns on whether the provider actually or subjectively knew of specific

infringement"). Plaintiff has not and cannot produce any evidence suggesting otherwise.

*Second*, the record is bare of any evidence from which it may be inferred that Defendants

were aware of any "facts or circumstances" indicating that the Images may infringe on Plaintiff's

alleged copyrights. For "red flag knowledge," the record must establish that "the provider was

***subjectively aware*** of facts that would have made [it] **'*objectively*' *obvious*** to a reasonable person"

that the ***specific copyright*** owned by the plaintiff was being infringed. *Viacom*, 676 F.3d at 31; *see*

*also Ventura Content, Ltd. v. Motherless, Inc.*, 2013 WL 11237204, at *6 (C.D. Cal. Jul. 3, 2013)

(the question is "whether the service provider deliberately proceeded in the face of blatant factors

of which it was aware" or "turned a blind eye to red flags of obvious infringement"), *aff'd*, 885 F.3d 597 (9th Cir. 2018). Here, there was no reason for Defendants to suspect infringement. (SUF ¶¶ 86, 111, 107, 132, 133.) Images are uploaded as digital files with only a numeric number and no visual representation. (*Id*. ¶¶ 81, 85-86.) Moreover, even if, theoretically, a UK Alamy employee reviewed the Images (*Id*. ¶¶ 18, 90, 96, 102, 107, 113, 119) and somehow deduced that the Platform may have contained Plaintiff's copyrighted material (of which there is no evidence)[4], there would have been no reason to believe that Plaintiff may not have authorized *those uploads* and "would be insufficient for many reasons to make infringement *obvious* to an ordinary reasonable person." *Vimeo*, 826 F.3d at 94, 96 (emphasis in original) (no red flag knowledge even if "an employee of the [ISP] has viewed [allegedly infringing content]" containing "all or nearly all of a ['recognizable'] copyrighted [work]," because employee cannot be expected to know if the user "had authorization to use the copyrighted [work]" or to determine if the use is fair).

Plaintiff's focus on third party SuperStock is an unsuccessful attempt to impute knowledge to Defendants, but Plaintiff's own exhibit to the Amended Complaint depicting the Marley Forum Image demonstrates that the image was neither uploaded by SuperStock, nor uploaded to the Platform for licensing, but rather to a chat forum as user-generated content.[5] (Am. Compl., Ex C

---

[4] Because UK Alamy receives over 100,000 contributor-images a day, it is impossible for it to check every image. (SUF ¶¶ 19, 56.) Instead, a sample of each contributor's images will be reviewed for technical and quality issues (*e.g.,* pornography, blurry images). (*Id*. ¶ 37.) Indeed, UK Alamy cannot and need not review every contributor-image uploaded to the Platform to determine whether it may or may not be infringing and appropriately relies on its contributor contracts, which include the appropriate representations and warranties that the content being uploaded to the Platform is not infringing. (*Id*. ¶ 55.) This is standard for service providers and, statutorily and otherwise, cannot be considered as part of the DMCA inquiry. *See, e.g.*, *MP3tunes*, 821 F. Supp. 2d at 644 ("safe harbor shall not be conditioned on a 'service provider monitoring its service or affirmatively seeking facts indicating infringing activity.'") (quoting 17 U.S.C. § 512(m)(1)); *Ventura*, 2013 WL 11237204, at *10 (similar) (collecting cases).

[5] Plaintiff asserts that SuperStock uploaded the Marley Image to the Platform pursuant to an agreement between Plaintiff and SuperStock. (Am. Compl. ¶¶ 31-38.) Plaintiff claims that it subsequently terminated the agreement, and that Defendants were aware that it no longer had the right to license the Marley Image. (*Id*. ¶ 35.) As an initial matter, Plaintiff concedes that SuperStock was authorized to license Plaintiff's images through June 2015. (*Id*. ¶¶ 31-34.) Moreover, following termination of the SuperStock Agreement, UK Alamy removed from the Platform those of Plaintiff's images that had been supplied to UK Alamy by SuperStock, including the Marley Image. (SUF ¶¶ 85, 122.)

at 2; SUF ¶¶ 125, 126.) Without any "red flag" knowledge, and as confirmed by Exhibit C to the Amended Complaint itself, Defendants cannot be held liable in connection with the Marley Forum Image. Even if Plaintiff's version of events were plausible, those facts are immaterial; after the Marley Image uploaded by SuperStock was removed, the DMCA imposed no obligation on Defendants to continue monitoring the Platform for subsequent uploads. *See* 17 U.S.C. § 512(m); *cf. Wolk*, 84 F. Supp. 2d at 747 ("one notice of infringement [does not] apply to all instances of that image appearing on the website"); *Viacom Int'l Inc. v. YouTube, Inc.*, 718 F. Supp. 2d 514, 528 (S.D.N.Y. June 23, 2010) (rejecting complaint that defendant "remove[d] only the specific clips identified in the DMCA notices, and not other clips which infringe the same works").

Notwithstanding whether Defendants had actual or "red flag" knowledge of the alleged infringement—which, for the reasons set forth in detail above, it did not—Defendants are still protected by the DMCA by virtue of their expeditious removal of the Images per §§ 512(c)(1)(A)(iii) and (C). SUF ¶¶ 87, 133; *Vimeo,* 826 F.3d at 95 (ISP "can still qualify for the safe harbor if, after gaining the requisite mental state, it acted expeditiously to disable access to the infringing content") (quoting Melville B. Nimmer & David Nimmer, Nimmer on Copyright, at § 12B.04[A][1][d], n.145 (2015)); *UMG Recordings, Inc.*, 718 F.3d at 1023.

As previously explained, Plaintiff failed to submit a DMCA takedown notice and Defendants only learned about the alleged infringement from the Initial Complaint. (SUF ¶¶ 81, 111, 132, 133.) Discovery has revealed that the three images contributed by SuperStock (the "SuperStock Contributor Images") were uploaded to the Platform while the SuperStock Agreement was in effect and then removed from the Platform before the expiration of the Survival

---

Plaintiff's assertion to the contrary is undermined by its own exhibit, which demonstrates that the Marley Image was uploaded to a forum as user-generated content. (Am. Compl., Ex C at 2.)

Term which was well before Plaintiff filed the Initial Complaint. (*Id*. ¶¶ 85, 123.)[6] As for the remaining images, the Images contributed by AF Archive were uploaded to the Platform either August 26, 2010, January 30, 2015, or March 2, 2016, and removed from the Platform on June 7, 2018, just three days after Plaintiff filed the Initial Complaint. (*Id*. ¶ 93.) The Images contributed by Moviestore Collective were uploaded to the Platform on April 21, 2010, and also removed from the Platform on June 7, 2018. (*Id*. ¶ 99.) One of the Images, which was not included in the Initial Complaint and contributed by Album, was uploaded to the Platform on October 26, 2018, and removed on October 4, 2019, almost a week *before* Plaintiff filed the Amended Complaint. (*Id*. ¶ 105; *compare* Initial Complaint, Ex. A *with* Am. Compl., Ex. A.) Finally, one of the Images, which was contributed by United Archives (the "United Archives Image"), was uploaded to the Platform on January 17, 2013, and similarly removed from the Platform on June 7, 2018.[7] (SUF ¶ 116.)

c) Defendants Did Not Have The Right Or Ability To Control The Images And Received No Direct Financial Benefit

Finally, to qualify for the § 512(c) safe harbor, an ISP must (1) "not receive a financial benefit directly attributable to the infringing activity" in a case where (2) it has "the right and ability to control such activity." 17 U.S.C. § 512(c)(1)(B). The safe harbor is only denied on this basis when both elements are not satisfied. Here, Defendants satisfy both elements.

*First*, Defendants had no right or ability to control the allegedly infringing activity. (SUF ¶¶ 35-36.) Just because Defendants can (and do) remove infringing user-uploaded content from

---

[6] As explained *supra*, the Marley Forum Image was uploaded as user-generated content to a forum on the Platform and promptly removed upon learning of this action. (SUF ¶¶ 125, 130.)

[7] The United Archives Image as shown in Exhibit A to the Amended Complaint is different than the version used by Plaintiff in Exhibit C. (*Compare* Am. Compl., Ex. A at 8 *with id*., Ex. C at 38-39.) Plaintiff claims it has a registration for the version of the United Archives Image as shown on Exhibit A, which has an Alamy internal refence number of D2938K. (SUF ¶ 109.) The image shown on Exhibit C, however, has an Alamy internal reference number of G1C1E6 (the "G1C1E6 Image"). (Am. Compl., Ex. C at 38; SUF ¶ 108.) Plaintiff has not established it owns a copyright in the GIC1EG Image, for which no license was ever purchased. (SUF ¶ 110.) In fact, the original slide of the G1C1E6 Image (which was only provided to Defendants by United Archive *after* the Initial Complaint was filed) merely gives a photo credit to Michael Grecco and Fox Studios. (*Id*. ¶ 111.) Photo credit is not the same as copyright.

the Platform, does *not* mean they have the requisite "right and ability to control" the third-party user's infringing activity. *See Viacom*, 676 F.3d at 38 ("'right and ability to control' infringing activity under § 512(c)(1)(B) 'requires something more than the ability to remove or block access to materials posted on a service provider's website.'"). Instead, such a "right and ability to control" requires that the "service provider [exert] *substantial influence* on the activity of users," *id.*, and "must take the form of prescreening content, rendering extensive advice to users regarding content, and editing user content," *Wolk*, 840 F. Supp. 2d at 748.

Here, Defendants do not and could not plausibly exert any substantial influence on the activities of its over 1,040,000 registered third-party contributors of which 227,000 contributors have images available. SUF ¶ 31; *Wolk*, 840 F. Supp. 2d at 748 ("considering that millions of images are uploaded [to defendant's website] daily, it is unlikely that [the] kind of prescreening [required for the 'right and ability to control'] is even feasible"). Further, Defendants do not edit, curate, select, control, or otherwise influence (let alone substantially influence) the content uploaded by contributors to the Platform. (SUF ¶ 35.) Defendants also do not prescreen or edit such content and only reject those that contain obvious image quality problems. (*Id.* ¶ 36.) As noted above, Defendants provide an artist friendly platform free from control or curation. (*Id.* ¶¶ 1, 35, 36.) This is the antithesis of the right or ability to control allegedly infringing behavior.

*Second*, Defendants did not receive a "financial benefit directly attributable to the infringing activity." Generally, an ISP may be found to have received such a financial benefit *only if* it promotes infringing activity to attract business and/or charges more for infringing content than for non-infringing content. *See Viacom*, 718 F. Supp. 2d at 521; *see also Wolk*, 840 F. Supp. 2d at 748 ("where there is no evidence in the record that the [ISP] attracted or retained subscriptions because of the infringement or lost subscriptions because of its eventual obstruction of the

infringement, no reasonable jury could conclude that the [ISP] received a direct financial benefit from providing access to the infringing material"). The record lacks any evidence that Defendants specifically capitalized on or promoted the Images—some of which were never even licensed—because Defendants did no such thing. (SUF ¶¶ 65-66, 128.) There is also no evidence that the Images cost more than any other content on the Platform or that Defendants intentionally set a higher price for any images based on copyright status. (*Id.* ¶¶ 54-55.) Indeed, as one of the first online image platforms that permitted any visual artist or collection to contribute content, Defendants are committed to protecting intellectual property rights. (*Id.* ¶¶ 39, 58, 59.) The Platform is not for pirated images and Defendants have received a limited number of copyright complaints over their 24 years in business; on the contrary, it is for visual artists and historical collections (whose works are out of copyright) to offer their content to third parties. (*Id.* ¶ 64.)

\*\*\*

In recognizing that online entities would not be able to survive if they were exposed to liability for every claim of copyright infringement arising from material posted by third-party users, Congress enacted a detailed and balanced framework that immunizes from copyright infringement liability online businesses that comply with the requirements of that framework. *See* S. Rep. No. 105-190, at 20 (1998) (DMCA "provides greater certainty to service providers concerning their legal exposure for infringements that may occur in the course of their activities."); *see also* 144 Cong. Rec. H7074-03, H7095 (1998). Plaintiff's claims not only disregard the central goals and purposes of the DMCA but are expressly prohibited by the DMCA's safe harbor provisions and should be dismissed in their entirety, with prejudice. *Cf. Teva Pharm. USA, Inc. v. Sandoz Inc.*, 2013 WL 3732867, at \*3 (S.D.N.Y. Jul. 16, 2013). Indeed, it would be impossible for Defendants under these circumstances to verify ownership or copyright of visual content because

no universal database of copyrighted content exists; this is why Defendants follow industry practices and rely on their contributor contracts. (SUF ¶¶ 54-56.)

**B. Defendants Cannot Be Held Directly Liable For Copyright Infringement Because They Did Not Engage In Any Volitional Conduct**

Plaintiff's direct copyright infringement claim also fail for the simple reason that Defendants did not engage in any "volitional conduct" that caused the alleged infringement, which "is an important element of direct liability." *Cartoon Network LP, LLLP v. CSC Holdings, Inc.*, 536 F.3d 121, 131 (2d Cir. 2008); *see also Wolk*, 840 F. Supp. 2d at 742. A defendant "that provides only a platform for third-party users to upload, download, and share content" has not engaged in sufficient "volitional conduct" to be directly liable; "it is the users who cause [such] infringement." *Bell v. Wilmott Storage Servs., LLC*, 12 F.4th 1065, 1081 (9th Cir. 2021); *see also Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 668 (9th Cir. 2017). A "display of copyrighted images on [a] website does not demonstrate volition," either. *Wolk*, 840 F. Supp. 2d at 743-44 (no volition where defendant displayed images posted by user).

This is exactly the case here. Defendants merely provided a platform through which third-party contributors can upload images to be offered for license by users, wherein Defendants passively stored low-resolution, watermarked copies and/or thumbnails of those images on their Platform. (SUF ¶¶ 67-70; 90, 96, 102, 113, 119.) Visual content is not even initially displayed on the Platform; rather, content will only appear if the user enters targeted keywords. SUF ¶¶ 20-21; *Cartoon Network*, 536 F.3d at 131 ("[Defendant's] conduct in designing, housing and maintaining a system that exists only to produce a copy" was not sufficiently proximate to any instance of unauthorized copying initiated by a one of the defendant's customers to hold the defendant liable as a direct infringer). Any reproduction or display of the Images by or on the Platform was the function of an automated process, initiated by a third-party contributor, with little to no

intervention by any of Defendants' employees. SUF ¶¶ 40, 80, 88, 94, 100, 106, 117; *see Cartoon Network*, 536 F.3d at 132 ("a system that automatically produces copies [of defendant-supplied content] on [customer's] command" is not "volitional"); *Wolk,* 840 F. Supp. 2d at 742 (automated reproduction, display, transmission, or copying of images onto products is not "volitional"). *Cf. Disney Enters., Inc. v. Hotfile Corp.*, 798 F. Supp. 2d 1303, 1309 (S.D. Fla. Jul. 8, 2011). Merely offering content for a license, as Defendants do, is simply not enough to establish volitional conduct. *See Shutterstock*, 2022 WL 4342174, at *6 (no volitional act where "Defendant's conduct was primarily passive—facilitating rather than performing the licensing.").[8]

## II. THE COURT SHOULD GRANT SUMMARY JUDGMENT TO DEFENDANTS ON PLAINTIFF'S COPYRIGHT MANAGEMENT INFORMATION CLAIM

Plaintiff also cannot demonstrate the Defendants violated 17 U.S.C. § 1202(a) based on Defendants' use of an Alamy watermark on low-resolution thumbnail versions of the Images—the only theory under § 1202(a) that Plaintiff offers. (*See* Am. Compl. ¶¶ 22, 61–68.) Section 1202(a) prohibits, in relevant part, the knowing provision of false copyright management information ("CMI") or the distribution or import for distribution of false CMI "with the intent to induce, enable, facilitate, or conceal infringement." Plaintiff cannot prove that Defendants (1) provided or distributed CMI; (2) knew that any CMI was false; or (3) acted with the intent to cause or conceal copyright infringement. *See, e.g.*, *Krechmer v. Tantaros*, 747 F. App'x 6, 9 (2d Cir. 2018); *Aaberg v. Francesca's Collections, Inc.*, 2018 WL 1583037, at *6 (S.D.N.Y. Mar. 27, 2018).

As a threshold matter, Defendants' watermarks are only applied to low-resolution sample

---

[8] If the Court finds Defendants directly liable for infringement (which it should not), the record of devoid of any instances of willfulness, which requires a plaintiff to show "(1) that the defendant was actually aware of the infringing activity, or (2) that the defendant's actions were the result of reckless disregard for, or willful blindness to, the copyright holder's rights." *Island Software & Comput. Serv., Inc. v. Microsoft Corp.*, 413 F.3d 257, 263 (2d Cir. 2005). Plaintiff cannot establish willfulness here, particularly given that the SuperStock Contributor Images were covered by a license, the Marley Forum Image was uploaded to the Platform as user-generated content, and the remaining Images were contributed by third parties without Defendants' involvement. (SUF ¶¶ 82, 88, 94, 100, 106, 117, 122, 123.)

images in the nature of "thumbnails," the use of which—in the context of the Platform—is a fair use that expressly does not come within the ambit of § 1202. 17 U.S.C. § 1201(c)(1); *Authors Guild, Inc. v. HathiTrust*, 755 F.3d 87, 95 (2d Cir. 2014). Watermarking is a standard industry practice implemented to support proper licensing practices and deter infringement. (SUF ¶ 72.) Regardless, as discussed below, Plaintiff's CMI claims fail on each element of § 1202(a).

### A.  The Alamy Watermark Is Not CMI

While the Court held, in its decision denying Defendants' motion to dismiss (ECF 32 at 9) that courts *outside* this circuit have "at least in some circumstances," included watermarks in the definition of CMI under § 1202(c), the case law in this Circuit has since gone the other way. In *Shutterstock*, Judge Hellerstein of the Southern District explicitly held that "Defendant's use of a watermark *does not constitute false CMI*. It identifies Defendant as the source of an image downloaded from its portfolio or platform." *Shutterstock*, 2022 WL 4342174, at *17. While not binding, this case provides highly persuasive justification for finding that the industrywide practice of using watermarks such as Defendants' should not constitute CMI for purposes of § 1202.

Moreover, Defendants' use of a watermark does not identify Defendants as "copyright interest holder," nor does it indicate authorship or copyright ownership (Am. Compl. ¶ 62; *see* SUF ¶ 73.) The watermark does not contain a copyright notice, or otherwise assert ownership of the images on the Platform. (*Id*., Ex. C; SUF ¶ 70.) Rather, Defendants' watermark is comprised solely of the word "Alamy" or the letter "a." as the Platform source for the image (Am. Compl. ¶ 44; *id*. at Ex. C; *see* SUF ¶ 70.). Defendants make clear, through the Platform, that they ***do not*** own the copyrights to the images stored therein. (*See, e.g.,* Am. Compl., Ex. C at 6.)

Application of the Alamy watermark to low-resolution thumbnail images serves as an indication of "the originator of the website" on which the images appeared, which Plaintiff knows

20

because it is an issue that was fully litigated in a case Plaintiff itself filed. *See Michael Grecco Photography, Inc. v. Everett Collection, Inc.,* 589 F. Supp. 2d 375, 387 (S.D.N.Y. Dec. 9, 2008) (holding that the defendant "correctly identified itself as the originator of the website on which the Images appeared (through…the [watermark] it placed over the Images)" and noting that "Grecco admits that [defendant] never claimed to be the author or copyright owner of the Images….") (vacated in part on other grounds); *see also Highsmith v. Getty Images (US), Inc.,* No. 1:16-cv-5924 (JSR), ECF 68 (S.D.N.Y. Oct. 28, 2016) (dismissing, *inter alia*, plaintiff's § 1202 claim premised on Alamy's use of its watermark on Alamy's website); *Id.*, ECF 67 at 10 (S.D.N.Y. Oct. 3, 2016) (explaining the arguments before the court in the foregoing motion).

### B.  Even If The Watermark Constitutes CMI, It Is Not False CMI

Even if the Court maintains that watermarks constitute CMI, there is no doubt that the supposed CMI at issue was truthful, and not false in contravention of the statute. The watermark accurately conveys—as Judge Hellerstein alluded to in the *Shutterstock* decision—that the Images were hosted on and offered through Alamy's licensing Platform. *Shutterstock*, 2022 WL 4342174, at *8; *see also* (SUF ¶ 73.) Defendants' use of a watermark cannot, therefore, sustain Plaintiff's § 1202 claim because such use does not constitute the provision and distribution of false CMI. Indeed, a watermark is consistently applied to all search results on the Platform. (*Id*. ¶ 69.) Much like a visitor to a public library, who notices the library's stamp on every book, a user of the Platform could not possibly believe that Defendants were purporting to be the authors of the Platform's nearly 350 million images and videos. (*Id*. ¶ 19.)

### C.  Plaintiff Has Not Established § 1202(a)'s Double Scienter Requirement

Even if Plaintiff could establish the first two elements of a § 1202(a) claim, it cannot, on the discovery record, satisfy the statute's "double-scienter requirement"—that Defendants

*knowingly* provided false CMI *and had the intent* to induce, enable, facilitate, or conceal an infringement. *See* 17 U.S.C. § 1202(a); *Shutterstock*, 2022 WL 4342174, at *8.

*First*, Defendants did not knowingly distribute any false CMI. As noted above, the CMI is not false, and the record shows that Defendants did not act knowingly. In accordance with industry standards, Defendants employ software which automatically affixes a watermark to every image uploaded to the Platform by a contributor. (SUF ¶¶ 68, 72.) This automatic process is essential to any stock content platform, allows potential licensees to view images they may wish to license, and deters improper use. (*Id*. ¶¶ 73.) This is the opposite of the knowing application of false CMI.

*Second*, Plaintiff cannot prove that Defendants had the intent to induce, enable, facilitate, or conceal infringement; in fact, the record shows the opposite. For more than 20 years, Defendants have abided by standard industry practice for stock content providers by establishing systems that automatically add a watermark to all images on their Platform. (SUF ¶¶ 68, 73.) This is done specifically to ***discourage and prevent*** infringement, not induce, enable, facilitate, or conceal it. *Id*. ¶ 71; *see, e.g.*, *Shutterstock*, 2022 WL 4342174, at *1, *8 (granting summary judgment on § 1202(a) claim, finding the "'Shutterstock' watermark . . . is not false" and "[its] purpose . . . is to prevent infringement"); *Zuma Press, Inc. v. Getty Images (US), Inc.*, 349 F. Supp. 3d 369, 375-76 (S.D.N.Y. Oct. 4, 2018) (granting summary judgment on § 1202(a) claim; there was "no evidence that [defendant] intended to induce or facilitate infringement" by adding watermark). *See also Sid Avery & Assocs., Inc. v. Pixels.com, LLC*, 479 F. Supp. 3d 859, 871 (C.D. Cal. Aug. 18, 2020).

Defendants use watermarks on low-resolution versions of the images on their Platform to indicate to users that a high-resolution version of the same image is available for license, having been contributed by a third party that has verified to Defendants that it has the right to enter into such a license. (SUF ¶¶ 67, 69, 70, 74.) Rather than induce infringement, Defendants' use of a

watermark is intended to induce proper licensing and payment to rights holders. (*Id*. ¶ 71.)

III.   **THE COURT SHOULD GRANT SUMMARY JUDGMENT TO DEFENDANTS ON PLAINTIFF'S INDIRECT INFRINGEMENT CLAIM AGAINST UK ALAMY**

Plaintiff purports to hold UK Alamy indirectly liable for US Alamy's supposed infringement of the Images. (*See* Am. Compl. ¶¶ 69-78.) As a threshold matter, it is not clear whether Plaintiff alleges vicarious or contributory infringement against UK Alamy, and therefore there is a failure of pleading. *Cf. Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 802 (9th Cir. 2007) (vicarious infringement and contributory infringement are distinct causes of action); *Fredricks v. Debra*, 2022 WL 125815 (E.D.N.Y. Jan 13, 2022) (pleading must put defendant on notice of the claims against it). Plaintiff's claim for indirect copyright infringement is also barred by the DMCA for the reasons discussed *supra*, S. Rep. No. 105-190, at 20 (safe harbor shields ISP from "all monetary relief for direct, vicarious, and contributory infringement"); *Wolk*, 840 F. Supp. 2d at 749, and because there is no direct infringement by US Alamy due to, *inter alia*, lack of volitional conduct, *Smith v. BarnesandNoble.com, LLC*, 143 F. Supp. 3d 115, 122 (S.D.N.Y. Nov. 2, 2015). Regardless, as discussed below, Plaintiff's claim fails under either theory.

A.   **There Is No Evidence Of Contributory Infringement**

Contributory infringement requires that the defendant, acting "with knowledge of the infringing activity, induced, caused, or materially contributed to the infringing conduct of another." *Wolk*, 840 F. Supp. 2d at 750. "An allegation that a defendant 'merely provided the means to accomplish an infringing activity is insufficient to establish a claim for contributory infringement.'" *Id*. (cleaned up). "Rather, participation in the infringement must be substantial and the authorization or assistance must bear a direct relationship to the infringing acts, and the contributory infringer must have acted in concert with the direct infringer." *Brought to Life Music, Inc. v. MCA Recs., Inc.*, 2003 WL 296561, at *2 (S.D.N.Y. Feb. 11, 2003). Accordingly, "one who

furnishes a copyrighted work to another but is innocent of any knowledge of the other party's intended illegitimate use will not be liable." *Wolk*, 840 F. Supp. 2d at 750.

The record shows that UK Alamy had no knowledge (or reason to suspect) infringement when the Images were made available on the Platform by third parties at any point prior to the Initial Complaint. (SUF ¶¶ 81, 107, 111, 132, 133.) UK Alamy did not actively participate in the alleged infringement, let alone make a "substantial" contribution while working "in concert" with the third-party contributors who unilaterally uploaded the content after the Superstock Agreement expired. (*Id*. ¶¶ 35-36) Instead, the record shows that UK Alamy merely provided the platform though which third-parties supposedly infringed and passively hosted and made available to customers certain images, completely unaware of the alleged infringement. (*Id*. ¶¶ 88, 90, 94, 96, 100, 102, 106, 113, 117, 119.) This is inadequate to establish contributory liability over UK Alamy. *See Faulkner v. Nat'l Geographic Soc'y*, 211 F. Supp. 2d 450, 475 (S.D.N.Y. Jul. 13, 2002) (no contributory infringement where defendant's lack of knowledge was objectively reasonable.)

**B.  There Is No Evidence Of Vicarious Infringement**

To establish vicarious liability, Plaintiff must establish that UK Alamy had both (1) "the right and ability to supervise the infringing activity" and (2) "a direct financial interest in such activities." *Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc.*, 443 F.2d 1159, 1162 (2d Cir. 1971); *see also Viacom*, 676 F.3d at 36. There also must be a "causal relationship between the infringing activity and any financial benefit [the] defendant reaps." *Arista Recs. LLC v. Lime Grp. LLC*, 784 F. Supp. 2d 398, 435 (S.D.N.Y. May 2, 2011). None of these factors is present here; as discussed *supra*, UK Alamy had no right or ability to supervise the alleged infringing activity by its contributors (SUF ¶ 35-36, 128) and derived no financial benefit whatsoever therefrom (*id.*, ¶¶ 64-66, 135.) *See, e.g.*, *Wolk*, 840 F. Supp. 2d at 751 (dismissing vicarious infringement claim based

24

on same facts that rendered defendant eligible for safe harbor under § 512(c)).

## IV.   DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT CONCERNING UNLICENSED IMAGES AND IMAGES ONLY LICENSED ABROAD

Of the 25 images identified on Plaintiff's Exhibit A to the FAC, only *six* were licensed

through the Platform in the US (the "Licensed Images").[9] (SUF ¶¶ 134, 137.) Since Plaintiff filed

this action, at least one court in this Circuit—one of Plaintiff's own cases—made clear that a

general "unconsummated offer" to license to a stock image is not copyright infringement. *Grecco*

*v. Age Fotostock Am., Inc.*, 2021 WL 4555599, at *5 (S.D.N.Y. Oct. 5, 2021). Distribution per 17

U.S.C. § 106(3) "requires dissemination of a 'copy' which is defined, in relevant part, as a

'material object in which a work is fixed.'" *Id.* at *4. Because "an unconsummated offer to

distribute does not give rise to liability under [§] 106(3) of the Copyright Act," *id.*, Plaintiff may

only seek damages related to the Licensed Images. *See Noland v. Janssen*, 2019 WL 1099805, at

*3–5 (S.D.N.Y. Mar. 8, 2019); *see also Update Art, Inc. v. Modiin Publ'g, Ltd.*, 843 F.2d 67, 73

(2d Cir. 1988); *Grecco*, 2021 WL 4555599, at *6-7. But Plaintiff's claims related to those six

images fail on the merits in any event. *See supra.* Moreover, the Copyright Act does not have

extraterritorial application, *Update Art*, 843 F.2d at 73, so there can be no infringement of the one

image licensed solely in the UK and Finland. (SUF ¶ 136). *See Noland*, 2019 WL 1099805, at *3–

5) (dismissing claims where relevant conduct occurred abroad).

## CONCLUSION

Defendants are entitled to summary judgment in their favor on all of Plaintiff's claims.

---

[9] A license for the Marley Image was purchased in December 2013, prior to the expiration of the Survival Term of the. Thus, Plaintiff may not claim infringement in connection with this authorized license. (SUF ¶ 137.) This was the only time the Marley Image was licensed before it was removed from the Platform on September 11, 2014, when the Survival Term expired. (*Id.* ¶ 122.) The Marley Forum Image was posted as user-generated content, (*Id.* ¶ 125), and was not available for a license; it merely appeared on an online message board. (*Id.* ¶ 127-28.)

Respectfully submitted,

Dated: New York, New York
      June 5, 2023

COWAN, DEBAETS, ABRAHAMS
& SHEPPARD LLP

By: /s/ Nancy E. Wolff
Nancy E. Wolff
Scott J. Sholder
CeCe M. Cole
nwolff@cdas.com
ssholder@cdas.com
ccole@cdas.com

*Attorneys for Defendants*
*Alamy Inc. and Alamy Ltd.*

## **CERTIFICATE OF SERVICE**

I, CeCe M. Cole, hereby certify that a true and correct complete copy of Defendants Alamy Inc.'s and Alamy Ltd.'s Memorandum of Law in Support of Their Motion for Summary Judgment, Rule 56.1 Statement of Undisputed Material Facts, Declaration of James Allsworth, dated June 5, 2023, and exhibits annexed thereto, and Declaration of Nancy E. Wolff, Esq., dated June 5, 2023, and exhibits annexed thereto has been served on counsel of record for plaintiff Michael Grecco Productions, Inc., by email on June 5, 2023 to:

Steven M. Cowley
Duane Morris LLP
100 High Street, Suite 2400
Boston, MA 02110
(857) 488-4261
smcowley@duanemorris.com

Peggy Senyie Chen
Peggy Chen
Duane Morris LLP
230 Park Avenue, Suite 1130
New York, NY 10169
(212) 404-8722
pschen@duanemorris.com

By: /s/ CeCe M. Cole
CeCe M. Cole